[Civ. No. 23468.   Second Dist., Div. Two.   Apr. 6, 1959.]

WILLIAM R. DICKENS et al., Respondents, v. CHESTER R. BUNKER et al., Defendants; LESTER V. PETERMAN, Appellant.

[Civ. No. 23469.   Second Dist., Div. Two.   Apr. 6, 1959.]

GILBERT COTA et al., Respondents, v. CHESTER R. BUNKER et al., Defendants; LESTER V. PETERMAN, Appellant.

Wallace J. Manley for Appellant.

Wallace R. Vernoff for Respondents.

HERNDON, J.—The two judgments here presented for review are identical in form and were rendered in companion cases, which were consolidated for purposes of trial. These judgments command appellant Lester V. Peterman specifically to perform certain contracts for the sale of land by executing deeds conveying the described parcels to respondents. The basic question is whether the evidence is sufficient to support the trial court's finding that one Chester A. Bunker acted as appellant's ostensible agent in entering into the contracts and in collecting from respondents the purchase money payments made pursuant thereto.

Under a written agreement dated September 1, 1947, Peter-

man agreed to sell to Bunker certain described tracts of land located in San Bernardino County. It was recited that Peterman recently had subdivided these tracts, one of which included the three lots here involved. By the terms of the agreement, Bunker agreed to pay Peterman a total purchase price of $58,140 in installments of $500 per month commencing on October 1, 1947, and continuing thereafter until the full amount was paid. The agreement also provided that so long as the buyer was not in default, the seller would be obligated to pay all taxes and assessments. The agreement incorporated a schedule of release prices for the lots and provided that the buyer should have the privilege at any time of using as a credit against the release price or prices of any lot or lots a sum equivalent to 90 per cent of all payments theretofore made by the buyer on account of the purchase price. Upon receipt by the seller of notice declaring the buyer's election to procure the release of any lot or lots, the seller agreed to convey to the buyer or its nominee or nominees the lot or lots designated for release. The agreement also obligated Bunker to supply Peterman with a written statement describing each lot sold during the preceding month with the name and address of the purchaser thereof. The concluding paragraph provided "[t]hat the parties hereto agree that their relationship under this agreement shall be that of seller and buyer and that nothing herein contained shall be deemed or interpreted to create the relationship of principal and agent, employer and employee or of co-partners to exist between them."

In September of 1947 appellant filed with the Division of Real Estate of the State of California a notice of intention to subdivide and subdivision questionnaire in connection with these tracts, together with a copy of the Peterman-Bunker agreement above mentioned. Thereafter, the Real Estate Commissioner issued a report in accordance with section 11018 of the Business and Professions Code containing among other things the following statements: "Information furnished this Division shows title vested in Lester V. Peterman . . . A contract has been entered into between Lester Peterman and Bunker Land Company whereby the latter is buying the entire tract. Adequate provision is made for the release of any lot at any time under the terms of the contract."

Respondents purchased their respective lots from Bunker pursuant to written contracts dated August 11, 1952. These contracts called for payment of the respective purchase prices

in monthly installments and entitled respondents to good and sufficient conveyances from Bunker upon complete performance. The buyers agreed to pay in addition to the specified purchase price all taxes and assessments assessed or levied after the date of the contracts. It appears that tax statements of the county of San Bernardino for the 1953 taxes on the lots here involved were originally mailed to Peterman who testified that he penciled in the names and addresses of respondents on the tax bills and forwarded them to the buyers.

Respondent Gilbert Cota testified that when he received the 1953 tax bill on the lot he was purchasing, he observed a stamped notation indicating that there had been a sale to the state. Thereupon, he and one John Deiro went to appellant's Pasadena law office to inquire about the situation. Apparently, Deiro also was a purchaser in the tract and likewise had received a tax bill bearing the same notation. When Deiro and Cota stated that they had purchased their lots and inquired about the notations on the tax bills, appellant told them that they would "have to see Mr. Bunker, that he takes care of those things."

Respondents thereafter paid the taxes on their respective lots for 1953 and subsequent years. They continued to pay the monthly installments on their purchase contracts to Bunker as they had done from the beginning. When their final payments were made in 1956, respondents received letters of acknowledgment from Bunker promising prompt delivery of deeds. When the promised deeds were not forthcoming, respondents made demand upon appellant. His refusal to recognize the Bunker contracts or to deliver deeds as demanded was followed by commencement of the instant actions.

Appellant testified that in 1953 he terminated his agreement with Bunker. When asked how the agreement was terminated, he replied: "Well, I sent them a letter that I wouldn't recognize any deal or any contract that they might make in reference to the sale of any lots, but that I would honor any sale that had been made prior to that time." The sales to respondents were made prior to the alleged termination of Bunker's contract and the record reveals no evidence that appellant ever notified respondents of such termination.

The court found that Bunker was ". . . acting as the ostensible agent of defendant LESTER V. PETERMAN . . . [and] . . . the agency relationship was created by the words, acts, and conduct of . . . PETERMAN, . . ." But this finding is not sustained by the evidence. Respondents do not contend

that Bunker was the actual agent of Peterman (Civ. Code, § 2316) and the conduct of appellant in the case at bar, as reflected in our comprehensive statement of the case, was insufficient to justify the finding of the court as to ostensible authority. The record is devoid of evidence that *appellant* intentionally, or by want of ordinary care, or in any manner, caused or allowed respondents to believe that Bunker possessed authority to act as appellant's agent. (*Hall* v. *Remp,* 73 Cal.App.2d 377, 380 [166 P.2d 372] ; Civ. Code, § 2317.[1])

Assuming that appellant is chargeable with the statements in the report of the Real Estate Commissioner, nothing in that report indicates that Bunker was the agent of appellant. Indeed, that report indicates that the relationship of Peterman and Bunker was that of seller and buyer, a relationship logically inconsistent with that of principal and agent. (*Cf. Beyerle* v. *California Surety Co.,* 120 Cal.App. 236 [7 P.2d 1034].)

The printed forms which Bunker employed as contracts of sale include on the reverse thereof a number of detailed restrictive covenants on the subject property, which respondent argues indicate an agency relationship. This printed material throughout refers to and identifies Peterman as the owner and subdivider of the subject property and the Bunker Land Company as a firm selling land in the tract, through Chester A. Bunker, identified as the corporation's president. Like the Real Estate Commissioner's report, discussed *supra,* the printed material to which respondents refer contains nothing which reasonably would suggest to a prospective buyer that Bunker was appellant's agent or had any rights other than the rights of a purchaser under a contract of sale. Finally, appellant's conversation with Cota and Deiro some months after the respondents had contracted with Bunker gives rise to no inference that Bunker had authority to bind appellant at the time the contracts were executed. It related exclusively to the payment of taxes which respondents were required to pay under their contract with Bunker. Appellant was obligated to pay the taxes under his contract with Bunker only so long as the latter was not in default. It is reasonably clear from the record that Bunker was in default in 1953.

The doctrine of ostensible authority is a specific appli-

---

[1] § 2317. *"Ostensible authority defined*

"OSTENSIBLE AUTHORITY, WHAT. Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess."

cation of the more general doctrine of estoppel. (*Cf. Johnson* v. *Schimpf,* 197 Cal. 43 [239 P. 401] ; see 1 Rest., Agency 2d, § 8, comment d.) As stated in 2 California Jurisprudence 2d 695, section 48: ''Despite dissimilarities in the language used to express the doctrines of ostensible authority and estoppel, however, they appear to be sufficiently alike to indicate that the doctrine of ostensible authority is a particularized application of the broader doctrine of estoppel to the facts of the ordinary agency transaction, and is, for all practical purposes, the same as authority by estoppel. This is substantiated by the requirement that the facts must raise an estoppel before recovery on the theory of ostensible authority is permitted.''

In *Marks* v. *Bunker,* 165 Cal.App.2d 695, 697 [332 P.2d 340], on facts which are virtually identical with those before us, another purchaser of a lot in the subject tract proceeded against Bunker and appellant Peterman on a somewhat different theory. The trial court in that case had ordered appellant Peterman to perform on a theory that he ''. . . was estopped 'from asserting or otherwise utilizing his pure record ownership' against the plaintiff 'to defeat her claim . . . to ownership of said real property.' '' In reversing the judgment and in rejecting the buyer's theory that Peterman was somehow culpable in failing to supervise Bunker's activities, the appellate court observed: ''The defendant Peterman was not charged with the duty of supervising Bunker's sales activities, and his failure to do so did not give rise to a charge of negligence against him. Nor under the circumstances, was he required to seek out the plaintiff and warn her of possible injury in the event her seller, Bunker, did not make his payments under the subdivision sale agreement and obtain a release as therein provided.''

The essential elements of the doctrine of ostensible authority are: representations by the principal, justifiable reliance thereon by the third party, and change of position or injury resulting from such reliance. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 451-452 [159 P.2d 958] ; *Ernst* v. *Searle,* 218 Cal. 233, 237 [22 P.2d 715].) The statements of Bunker as to his authority to act on behalf of Peterman cannot be utilized to support the finding of ostensible authority.
''[I]t is established that ostensible authority can be created only by the acts or declarations of the principal, not by those of the agent, and this is implied in the code definition of ostensible agency. A belief that the agent has authority,

founded on the agent's statement alone, is not sufficient, for a party has no right to take an agent's word for the existence of his authority." (*Morse* v. *Pacific Gas & Elec. Co.*, 152 Cal. App.2d 854, 857 [314 P.2d 189] ; see 2 Cal.Jur.2d 698, § 50.) ▉ In the instant case there is no evidence of acts of appellant Peterman sufficient to support the finding of ostensible authority. (See *Bernstine* v. *Jones,* 108 Cal.App.2d 135 [238 P.2d 18].)

Each judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.

A petition for a rehearing was denied May 1, 1959, and respondents' petition for a hearing by the Supreme Court was denied June 3, 1959.