[Civ. No. 59634. Second Dist., Div. Five. Feb. 5, 1981.]

CHARTERED BANK OF LONDON, Plaintiff and Appellant, v. CHRYSLER CORPORATION, Defendant and Respondent.

**COUNSEL**

Cohen, England, Whitfield & Osborne and Anson M. Whitfield for Plaintiff and Appellant.

McCutchen, Black, Verleger & Shea, Franklin H. Wilson and Kerry M. Kinney for Defendant and Respondent.

**OPINION**

**OLDER, J.\***—This is an appeal by plaintiff and appellant, Chartered Bank of London (the Bank), from a judgment in favor of defendant Chrysler Corporation (Chrysler). The Bank proceeded to trial on a conversion theory, contending that Chrysler wrongfully took possession of a Chrysler boat which was subject to a security interest. The trial court found that the ownership and possession of the boat remained in Chrysler or its warehousing agent, SLT Warehouse Company (SLT), at all times relevant and that the Bank did not have a valid security interest which attached to the subject boat. The Bank contends that the evidence is insufficient to support the trial court's findings.

At the request of Chrysler, SLT entered into a field warehouse agreement with Global Yacht Sales (Global) whereby Chrysler boats would be field warehoused by SLT on the premises on which Global conducted its business. The field warehouse consisted of a fenced area within

---

*Assigned by the Chairperson of the Judicial Council.

which boats, trailers, and related items were stored. Although located within this fenced area, the Global sales office was not a part of the field warehouse. Ten to twelve signs stating: "NOTICE all commodities in or upon these premises in the custody of SLT WAREHOUSE COMPANY, ST. LOUIS, MO.," were posted at various intervals on the fencing surrounding the field warehouse, including one posted on the front gate. In addition to Chrysler boat products field warehoused by SLT, Global had in its possession certain Chrysler outboard motors which were not field warehoused and were not in the possession of SLT. On April 7, 1977, SLT issued to Chrysler a warehouse receipt for a Chrysler Sport Fury boat which is the subject of this action. Chrysler's instructions to SLT were to release the boat to Global only upon receipt of a cashier's or certified check in the amount of $4,531.25, the value of the boat stated in the warehouse receipt. On June 29, 1977, Global entered into a conditional sale contract with defendant Jess T. Alvarado covering the subject boat, a trailer and related equipment. Under the contract Global was granted a security interest in the boat to secure payment of the balance due. The contract was then assigned by Global to Commercial and Farmers National Bank, the Bank's predecessor in interest.

An application for boat registration signed by Alvarado was filed with the Department of Motor Vehicles (DMV) and contained a "proof of ownership" showing that Global, as a dealer, had sold the boat to Alvarado. Thereafter, a certificate of ownership of the boat was issued by the DMV showing Jess T. Alvarado as the registered owner and Commercial and Farmers Bank as the legal owner.

Despite Global's purported sale of the boat to Alvarado, Global made no payment to SLT for the boat, SLT never delivered possession of the boat to Global, and Alvarado never received possession of the boat. Chrysler never received payment for the boat from anyone. After Global ceased to conduct business in August of 1977, the subject boat was returned to Chrysler by SLT. When Alvarado defaulted in his payments to the Bank, the Bank demanded from Chrysler the return of the boat or its value. Chrysler's refusal to comply with this demand gave rise to the present action. We conclude that the trial court's findings were supported by substantial evidence and the judgment must be affirmed.

■ The elements of a conversion action are: (1) plaintiff's ownership or right to possession in the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's

property rights; and (3) damages. (*Baldwin* v. *Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393 [145 Cal.Rptr. 406].) In this action the Bank had the burden of proving the existence of each of the above elements.

■ The Bank contends that its right to possession of the boat derives from the security interest given it under the conditional sale contract entered into between Global and Alvarado. However, the mere existence of the conditional sale contract and the purported granting of a security interest therein is insufficient to prove such right. The Bank must prove further that the security interest was enforceable. California Uniform Commercial Code section 9203 provides in pertinent part as follows: "Subject to the provisions of Section 4208 on the security interest of a collecting bank and Section 9113 on a security interest arising under the division on sales, a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless [¶] (a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral...; and [¶] (b) Value has been given; and [¶] (c) *The debtor has rights in the collateral.*" (Italics added.)

The Bank in the instant case failed to prove that the debtor, Alvarado, had rights in the collateral. Although the alleged security interest of the Bank included the right to possession upon default by Alvarado, the Bank failed to prove that Global acquired the right to possession from either SLT or Chrysler, and that Alvarado acquired the right to possession from Global. The evidence at the trial supports the trial court's finding that Alvarado did not acquire any ownership interest in the boat and had no authority to pledge the boat as security. Chrysler's instructions to SLT concerning the release of the boat to Global required that SLT receive from Global a certified or cashier's check before delivering the boat to Global. No such payment was ever made by Global to SLT. Accordingly, Global never acquired the right to possession of the boat, and the evidence shows that possession was never relinquished by SLT until it later redelivered the boat to Chrysler upon demand.

■ The Bank contends that the certificate of ownership for the boat issued by the DMV is proof of its interest as legal owner and of its right to possession under the security agreement. The evidence shows that the

"proof of ownership" submitted by Global to the DMV consisted of a statement that Global sold the boat to Alvarado.

Vehicle Code section 9852 states in part: "...The issuance of a certificate of ownership or certificate of number under this chapter shall not in any way be construed that the department is warranting or guaranteeing the title of the vessel as it appears on such certificates."

In *Beverly Finance Co.* v. *American Casualty Co.* (1969) 273 Cal. App.2d 259 [78 Cal.Rptr. 334], the court held that the interest of the true owner of a vehicle took priority over a subsequent purchaser of chattel paper, although the DMV registration slip showed the subsequent purchaser of chattel paper to be the legal owner. In the instant case the Bank failed to prove the first element of conversion—its ownership or right to possession in the property at the time of the alleged conversion.

■ The Bank next contends that the evidence is insufficient to support the finding that Chrysler had title to and was the owner of the boat. California Uniform Commercial Code section 1201, subdivision (15), defines "Document of title" as follows: "'Document of title' includes bill of lading, dock warrant, dock receipt, warehouse receipt,...and also any other document which in the regular course of business or financing is treated as adequately evidencing that the person entitled under the document (Section 7403(4)) has the right to receive, hold and dispose of the document and the goods it covers. To be a document of title a document must purport to be issued by a bailee and purport to cover goods in the bailee's possession which are either identified or are fungible portions of an identified mass."

A warehouse receipt is defined (*id.*, § 1201, subd. (45)), as follows: "'Warehouse receipt' means a document evidencing the receipt of goods for storage issued by a warehouseman (Section 7102), and which, by its terms, evidences the intention of the issuer that the person entitled under the document (Section 7403(4)) has the right to receive, hold and dispose of the document and the goods it covers. Designation of a document by the issuer as 'warehouse receipt' is conclusive evidence of such intention."

Civil Code section 679 provides: "The ownership of property is absolute when a single person has the absolute dominion over it, and may

use it or dispose of it according to his pleasure, subject only to general laws."

In addition to the right of Chrysler to "receive, hold and dispose" of the boat by reason of the warehouse receipt issued to it by SLT, there are rebuttable presumptions that Chrysler was the owner, based upon the delivery of the boat by SLT to Chrysler and Chrysler's possession of the boat after Global terminated its business. (Evid. Code, §§ 632 and 637.) These presumptions were never overcome by the Bank. The evidence at the trial was that Chrysler was in possession of the boat when it was delivered to SLT and the warehouse receipt was issued, and that the boat was a "Chrysler" boat. Mr. Walton, SLT's divisional vice-president, who set up the field warehouse on Global's premises and was responsible for redelivering the boat to Chrysler testified that the boat was redelivered to Chrysler because "it belonged to Chrysler." The evidence supports the trial court's finding that Chrysler was the owner and had the right to possession of the boat.

■ The Bank's next contention is that Global had authority to sell the boat on the theory that there had been an "entrusting" of the boat to Global within the meaning of California Uniform Commercial Code section 2403, subdivisions (2) and (3). These subdivisions provide: "(2) Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in ordinary course of business. [¶] (3) 'Entrusting' includes any delivery and any acquiescence in retention of possession for the purpose of sale, obtaining offers to purchase, locating a buyer, or the like; regardless of any condition expressed between the parties to the delivery or acquiescence and regardless of whether the procurement of the entrusting or the possessor's disposition of the goods have been such as to be larcenous under the criminal law."

The difficulty with the Bank's theory is that there was neither a delivery to nor a retention of possession of the boat by Global. Moreover, the evidence fails to disclose that Alvarado was a "buyer in ordinary course of business." The establishment of the field warehouse, as required by Chrysler, was to prevent delivery to Global except upon payment in full by Global under Chrysler's instructions to SLT. The Bank failed to prove payment by, or delivery to, Global. On the contrary the evidence shows that the only deliveries that occurred were the original delivery by Chrysler to SLT and the redelivery by SLT to Chrysler.

Under the Bank's theory that there was an entrusting of the boat to Global, the Bank had the further burden of proving that the sale from Global to Alvarado was to a "buyer in ordinary course of business." (Cal. U. Com. Code, § 2403, subd. (2).) A "buyer in ordinary course of business" means ". . . a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . ." (Cal. U. Com. Code, § 1201, subd. (9).)

The Bank contends that the signs posted by SLT on the Global premises were inadequate to inform any reasonable person that any goods located within the fenced-in premises were in the possession of SLT. This was a question for the trier of fact. Regardless of the efficacy of the signs to inform a prospective buyer of the interest of SLT in the boat, there is no evidence to support the Bank's contention that Alvarado purchased the boat from Global in good faith and without knowledge that the sale to him was in violation of the ownership rights of Chrysler or SLT. Alvarado was not called to testify concerning his knowledge at the time that he executed the conditional sale contract. No sales personnel of Global were called to testify concerning the sale. The record is devoid of any evidence of Alvarado's good faith. Good faith cannot be presumed, particularly where, as here, the buyer (Alvarado) signed a conditional sale contract obligating him among other things to make payments on the boat, he made a cash down payment of $1,600, and two monthly payments of $103.23 each, and then defaulted without ever having taken possession of the boat. The contract was signed by Global on June 29, 1977. Global terminated business in August 1977. In view of Global's unauthorized sale of the boat on the eve of its business demise, one inference that may be drawn is that the transaction was a sham to enable Global to obtain the proceeds from financing the sale from the Bank without delivery of the boat. An inference may also be drawn, from the fact that Alvarado never took possession of the boat, that Alvarado was aware of the sham.

The Bank's next contention is that Chrysler is bound by the acts of Global for the reason that Global was an actual or ostensible agent of Chrysler. As to actual agency the evidence is that Global had no authority to sell the boat until the purchase price was paid by Global to SLT. As to ostensible agency Civil Code section 2334 provides: "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want

of ordinary care, incurred a liability or parted with value, upon the faith thereof." In order to prove Chrysler's liability under a theory of ostensible agency, it was incumbent on the Bank to show that Alvarado relied upon Global's ostensible authority in good faith and without want of ordinary care. Since Alvarado did not testify, there is no evidence to support the theory. ■ The elements necessary to fasten liability upon the principal under the theory of ostensible authority are those which give rise to an estoppel. These elements include such authority as the principal, either intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess, justifiable reliance thereon by the third party, and change of position or injury resulting from such reliance. (Civ. Code, §§ 2317, 2318; *Dickens* v. *Bunker* (1959) 169 Cal.App.2d 383, at p. 388 [337 P.2d 489], hg. den.) The Bank failed to prove that Global was either the actual or ostensible agent of Chrysler.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.