[No. G041512. Fourth Dist., Div. Three. Apr. 26, 2010.]

MARK B. PLUMMER, Plaintiff and Appellant, v.
DAY/EISENBERG, LLP, Defendant and Respondent.

 

## COUNSEL

Merritt L. McKeon for Plaintiff and Appellant.

Eisenberg Law Firm and Mark W. Eisenberg for Defendant and Respondent.

## OPINION

**IKOLA, J.**—Plaintiff Mark B. Plummer, an attorney, appeals from a judgment entered after the court granted summary judgment to defendant Day/Eisenberg, LLP, a law firm. Plummer alleged Day/Eisenberg converted or interfered with settlement funds recovered in a personal injury action handled by Plummer, Day/Eisenberg, and another law firm, Bisom & Cohen. The court granted summary judgment because it found Plummer had no direct contractual relationship with the clients and thus lacked an immediate right to possess the settlement funds.

██ We reverse the judgment and remand. Triable issues exist on the elements of conversion. Most notably, triable issues exist whether Plummer had an immediate right to possess the settlement funds through an attorney's lien. Day/Eisenberg fails to show Plummer's claimed lien is invalid as a matter of law. And triable issues also exist on the interference cause of action.

## FACTS

*Allegations Made in First Amended Complaint*

Plummer agreed with Attorneys Andrew Bisom and Isaac Cohen in March 2003 to represent the Acosta family in the underlying personal injury suit.

They orally agreed "[Cohen] and [Bisom] would finance the prosecution of the case and provide secretarial and support services, [Plummer would] act as Counsel, the fees would be slip [*sic*] 50% to [Plummer] and 50% to [Cohen] and [Bisom], and that [the law firm] Bisom & Cohen would represent the Acosta Family with [Plummer] acting as Of Counsel."[1] The clients executed a two-page retainer agreement by which they "acknowledged that [Plummer] would be working on their case, that [Plummer] would be receiving 50% of the total fees, and granted [Plummer] an independent Lien on their recovery to secure those fees."

Bisom & Cohen allegedly forced Plummer out of the case in April 2004, after he worked on it for over a year. It took possession of the case file and prevented him from performing his agreed-upon duties. Plummer notified defense counsel in the underlying case about his lien and asked to be named a payee on any settlement check.

In May 2006, defense counsel told Plummer the case was settling for $1 million. Plummer waited for a month to receive his attorney fees from Bisom or Cohen. Plummer then contacted defense counsel, who stated the settlement check named Plummer as a payee and had been sent to Day/Eisenberg.

Allegedly, Bisom, Cohen, and Day/Eisenberg either "forged" Plummer's endorsement on the settlement check or otherwise "wrongfully negotiated" it to retain all of the attorney fees, despite their knowledge of his lien. Bisom presented the check to Bank of America in July 2006, which negotiated it without Plummer's endorsement.

Plummer asserted causes of action against Day/Eisenberg for conversion and interference with prospective economic advantage. He also asserted a cause of action for conversion against Bank of America. Finally, he asserted causes of action for conversion, interference, and constructive fraud against Bisom and Cohen.

*The Summary Judgment*

In its summary judgment motion, Day/Eisenberg contended the conversion cause of action failed as a matter of law because Plummer did not perfect an enforceable attorney's lien on the settlement funds. It reasoned Plummer did not therefore own or have a right to possess the settlement funds.

Day/Eisenberg relied upon the two-page Bisom & Cohen retention agreement. The first page of the retention agreement provides, "The undersigned

---

[1] "Bisom & Cohen" refers to the law firm; "Bisom" and "Cohen" refer to the two lawyers individually.

('CLIENT') hereby employs **Bisom & Cohen, LLP** ('ATTORNEY') to represent CLIENT" in the underlying case. It further provides, "CLIENT assigns ATTORNEY a lien of **THE CONTINGENCY PERCENTAGE(S) IDENTIFIED IN THE RETAINER WITH** [yet another law firm] regardless of whether such Gross Recovery is by way of settlement, judgment or other method."[2] It further provides, "ATTORNEY, at his discretion, may associate other counsel at ATTORNEY'S expense." The clients signed at the bottom of the page, as did Plummer over the name "Mark B. Plummer, Of Counsel."

The second page of the retention agreement is entitled "ACKNOWLEDG-MENT OF ASSOCIATION." It provides in full: "The undersigned acknowledges and agrees that although they are ostensibly retaining the Law Firm of Bisom & Cohen, LLP to represent them, that [Plummer] will [be] working on the case in the capacity of 'Of Counsel' and will be receiving 50% of any and all legal fees derived from the representation. (This does not increase the total amount of fees.) The undersigned grants The Law Offices of Mark B. Plummer an independent lien on the undersigned's recovery to the extent of any unpaid fees or costs." It was signed by the clients.

Day/Eisenberg also contended that the conversion claim failed because it did not possess or control the settlement proceeds. Day/Eisenberg offered evidence tending to show Bisom & Cohen retained it in December 2005—20 months after Plummer stopped working on the case—to assist with trial preparation. Day/Eisenberg worked on the case pursuant to a fee-sharing agreement with Bisom & Cohen, by which Bisom & Cohen agreed to satisfy any outstanding liens on the recovery. After the settlement, Bisom presented the settlement check to Day/Eisenberg partner Mark Eisenberg, who endorsed it on behalf of Day/Eisenberg and returned it to Bisom. Day/Eisenberg later invoiced Bisom for its attorney fees, which Bisom paid out of his client trust account.

Day/Eisenberg further contended the interference cause of action failed as a matter of law. It asserted Plummer had no economic relationship with the clients; Day/Eisenberg did not know about his purported lien until after the settlement; and it did not dishonor his lien, interfere with his relationship with the clients, or otherwise interfere with any purported economic advantage. Day/Eisenberg again relied upon the retention agreement. It also offered evidence tending to show (1) it did not know about any nonmedical liens in the case, for which Bisom & Cohen was solely responsible for satisfying, (2) it possessed the settlement check only while Eisenberg endorsed it, and

---

[2] The agreement with the other law firm provided the clients would pay the firm 40 percent of any recovery as its attorney fees.

never possessed any settlement proceeds other than those disbursed to it by Bisom, and (3) it had no involvement in the case while Plummer worked on it.

Plummer opposed summary judgment, offering e-mail correspondence between Day/Eisenberg and defense counsel in the underlying action. Defense counsel had informed Bisom and Day/Eisenberg before he disbursed the settlement funds that Plummer would be named a payee on the settlement check because Plummer "has now filed a valid lien." Day/Eisenberg partner Brian Day wrote back to defense counsel "to take another run at convincing [him] to leave Mr. Plummer off of the settlement draft." Day acknowledged "Mr. Plummer has established a valid claim of lien in your eyes," but claimed the lien was invalid and so "Mr. Plummer may only seek compensation from the client's attorney (in this case, Bisom & Cohen)."

Plummer also offered a copy of the settlement check. The check had been made payable to "Joseph and Sylvia Acosta, Law Offices of Andrew S. Bisom, Mark B. Plummer, and Day/Eisenberg . . . ." The check had five endorsements on the back, though Plummer stated none was his. The last endorsement is illegible. Plummer contended both Day and Eisenberg endorsed the check for Day/Eisenberg, though only one endorsement was needed, to "assist[] in making it appear that all five payees on the check had endorsed the check. [Day and Eisenberg] were part and parcel of the scheme to cash the check without [Plummer's] signature . . . ."

The court granted Day/Eisenberg's summary judgment motion.[3] On the conversion cause of action, it found "[Plummer] had no direct contractual relationship giving rise to a lien entitling him to payment from the settlement proceeds paid to [the] client. Since [Plummer] had no lien, he had no immediate right to possession of any part of the settlement proceeds for payment of fees orally agreed to by co-defendants Bisom and Cohen. Nor was there a direct contractual right to the proceeds directly between [Plummer] and [Day/Eisenberg]. Without a right of possession at the time of the alleged conversion, [Plummer] cannot prevail on the 2nd Cause of Action for Conversion against [Day/Eisenberg]." On the interference cause of action, the court found "because no contractual relationship existed [between Plummer and the clients, Day/Eisenberg] could not interfere with it." It entered judgment accordingly.

---

[3] The court had already denied summary adjudication to Bisom on the constructive trust and conversion causes of action, but granted summary adjudication to Bisom on the interference cause of action. The record does not indicate any disposition of Plummer's causes of action against Cohen.

## DISCUSSION

To obtain summary judgment, a defendant must "show that there is no triable issue as to any material fact and that [it] is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[4] A defendant must show an element of each of plaintiff's causes of action cannot be established, or show a complete defense thereto. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) The defendant bears the burden to "make a prima facie showing of the nonexistence of any triable issue of material fact . . . ." (*Ibid.*) If it does so, the plaintiff must show some triable issue of material fact does exist. (*Ibid.*) On appeal, "we must independently examine the record to determine whether triable issues of material fact exist." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

*The Conversion Claim: Triable Issues Exist Whether Plummer Had a Right to Possess the Settlement Funds Through an Attorney's Lien*

■ " 'Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages.' " (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 451–452 [61 Cal.Rptr.2d 707] (*Zerin*).)

■ The parties focus primarily on whether Plummer had a right to possess his share of the settlement funds. "Neither legal title nor absolute ownership of the property is necessary. [Citation.] A party need only allege it is '*entitled to immediate possession at the time of conversion.* [Citations.]' [Citation.] However, a mere contractual right of payment, without more, will not suffice." (*Zerin, supra,* 53 Cal.App.4th at p. 452.)

The existence of a lien, however, can establish the immediate right to possess needed for conversion. "One who holds property by virtue of a lien upon it may maintain an action for conversion if the property was *wrongfully* disposed of by the owner and without authority . . . ." (*Bastanchury v. Times-Mirror Co.* (1945) 68 Cal.App.2d 217, 236 [156 P.2d 488].) Thus, attorneys may maintain conversion actions against those who wrongfully withhold or disburse funds subject to their attorney's liens. (See, e.g., *Weiss v. Marcus* (1975) 51 Cal.App.3d 590, 598–599 [124 Cal.Rptr. 297] (*Weiss*)

---

[4] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[attorney's conversion cause of action against former client's new attorneys survived demurrer due to alleged lien on settlement proceeds].)[5]

Day/Eisenberg concedes a valid attorney's lien would grant Plummer an immediate right to possess the settlement funds. It states in its brief, "only through an enforceable attorney charging lien could [Plummer] obtain a claim to [the] settlement proceeds. Because he had no valid lien, [Plummer] did not acquire an ownership interest in the monies paid in settlement to the [clients]."

But Day/Eisenberg contends Plummer lacked the "direct contractual relationship" with the clients needed to create a lien, relying primarily upon *Trimble v. Steinfeldt* (1986) 178 Cal.App.3d 646 [224 Cal.Rptr. 195] (*Trimble*). In *Trimble*, an attorney, Fagel, had once worked for another attorney, Shore, in exchange for support services and a percentage of "*funds received* from cases he successfully brought to a conclusion through settlement or trial." (*Id.* at p. 650.) The court held this agreement between Fagel and Shore did not give Fagel a lien on the client's recovery. (*Id.* at p. 651.) It recognized attorney's liens are created by contract, but noted, "The vice here is that there *is* no agreement between [the client] and [Fagel]." (*Ibid.*) Two factors showed the client never agreed to grant Fagel a lien. First, Fagel always "function[ed] as Attorney Shore's agent; his name never appears as an attorney of record in [the client's] case, for he continued to perform services thereon for and at the behest of Attorney Shore. [Citation.] Second, [the client] never retained [Fagel's] services in connection with the underlying action. The retainer agreement she signed states she retains *Samuel Shore* as her attorney, agreeing to pay him fifty percent 'of any and all monies collected or received by or for the undersigned in said matter . . . .' The agreement continues, 'I authorize him to associate any other attorney . . . at his discretion, *but at no expense to me* . . . .' (Italics added.) The agreement gives *Attorney Shore* a lien on [the client's] cause of action or any recovery." (*Trimble*, at p. 651.)

■ Day/Eisenberg also relies upon *Carroll*, which requires courts to decide the existence of an attorney's lien in a separate action subsequent to the action in which the lien is asserted. (*Carroll, supra*, 99 Cal.App.4th at p. 1177.) In preliminary dicta, *Carroll* summarized *Trimble* and another case:

---

[5] "Unlike a judgment creditor's lien . . . an attorney's lien is a 'secret' lien; it is created and the attorney's security interest is protected even without a notice of lien." (*Carroll v. Interstate Brands Corp.* (2002) 99 Cal.App.4th 1168, 1172 [121 Cal.Rptr.2d 532] (*Carroll*).) Cases not involving attorney's liens are therefore inapt. (See *Chartered Bank of London v. Chrysler Corp.* (1981) 115 Cal.App.3d 755, 760 [171 Cal.Rptr. 748] [bank failed to show enforceable security interest]; *Baldwin v. Marina City Properties, Inc.* (1978) 79 Cal.App.3d 393, 410 [145 Cal.Rptr. 406] [creditors failed to allege default under a security agreement entitling them to possession].)

"Because an attorney's lien is not automatic and requires a contract for its creation, a direct contractual relationship between the attorney and the client is essential. When the client enters into a retainer agreement with one particular attorney, a lien in favor of another, albeit associated attorney is neither express nor implied and does not exist. [Citations.] Associate counsel must look to the client's attorney for compensation, not to the client." (*Carroll*, at p. 1172.)

The court apparently relied upon *Trimble* and *Carroll* in finding Plummer had no attorney's lien on the settlement proceeds. It found "[Plummer] had no direct contractual relationship giving rise to a lien entitling him to payment from the settlement proceeds paid to [the] client. Since [Plummer] had no lien, he had no immediate right to possession of any part of the settlement proceeds . . . ."

But our independent review of the retention agreement shows it purports to grant an attorney's lien directly to Plummer. Day/Eisenberg repeatedly notes the first page of the retention agreement provides the clients "hereby employ[] **Bisom & Cohen, LLP** . . . ." But the retention agreement does not end there, according to Plummer.[6] It comprises two pages that must be read together. (Civ. Code, §§ 1641, 1642.) On the second page, the clients "acknowledge[] and agree[] that although they are ostensibly retaining the Law Firm of Bisom & Cohen, LLP to represent them, that [Plummer] will [be] working on the case in the capacity of 'Of Counsel' and will be receiving 50% of any and all legal fees derived from the representation." It further provides the clients grant Plummer "an independent lien on [their] recovery to the extent of any unpaid fees or costs." The retention agreement thus purports to create a contract between Plummer and the clients whereby Plummer will perform legal work on their case and the clients expressly grant an attorney's lien on any settlement funds to Plummer.

Triable issues exist on whether Plummer acted as the clients' attorney, consistent with a direct contractual relationship. Plummer filed a "Substitution of Attorney" as "Mark Plummer Of Counsel For Bisom & Cohen" when he began representing the clients. As the case progressed, Plummer filed a complaint over his signature and under his bar number, filed other documents similarly, and appeared in court personally. This evidence arguably places

---

[6] Day/Eisenberg contends in a rehearing petition that the two-page retention agreement was two separate documents. It notes Bisom stated in a declaration that the second page—the Acknowledgement of Association—was drafted without the knowledge or consent of Bisom & Cohen. But Bisom did not dispute Plummer's allegation the *clients* executed "a two page Written Retention Agreement," which included the Acknowledgement of Association. And Plummer stated in a declaration: "On March 7, 2003 I met with the Acosta family and obtained a Retention Agreement and Acknowledgement of Association . . . ." At most, a triable issue exists here.

Plummer in stark contrast to the associate in *Trimble*, who functioned solely as a behind-the-scenes agent and whose "name never appears as an attorney of record . . . ." (*Trimble, supra*, 178 Cal.App.3d at p. 651.)

■ Triable issues similarly exist on whether Plummer is in the situation contemplated by *Carroll*. That case condemned the hypothetical attorney who would wrongly assert a lien on a client's recovery by piggybacking onto a lien granted "in favor of another, albeit associated attorney . . . ." (*Carroll, supra*, 99 Cal.App.4th at p. 1172.) It rightly denounced "me too" claims as violating the rule that attorney's liens are created by contract, not operation of law. Day/Eisenberg fails to show Plummer is trying to ride on the coattails of a lien granted to another attorney. The second page of the retention agreement expressly grants "an independent lien" to Plummer.

Thus, triable issues exist on whether Plummer has an attorney's lien on the settlement funds. The lien, if proven at trial, would satisfy the "right to possess" element of conversion.

*Day/Eisenberg Fails to Show Plummer's Attorney's Lien Is Invalid As a Matter of Law*

■ As another ground for affirming summary judgment (see § 437c, subd. (m)(2)), Day/Eisenberg asserts the purported lien is invalid, and thus cannot establish Plummer's "right to possess" as a matter of law. It contends the lien violates rule 3-300 of the Rules of Professional Conduct (rule 3-300). The California Supreme Court has held "an attorney who secures payment of hourly fees by acquiring a charging lien against a client's future judgment or recovery has acquired an interest that is adverse to the client, and so must comply with the requirements of rule 3-300." (*Fletcher v. Davis* (2004) 33 Cal.4th 61, 71 [14 Cal.Rptr.3d 58, 90 P.3d 1216] (*Fletcher*).) Rule 3-300 requires attorneys who acquire interests adverse to their clients to do so on "fair and reasonable" terms and, in writing, disclose those terms and advise the clients they may seek independent counsel.[7] Day/Eisenberg notes the retention agreement does not so advise the clients.

But the *Fletcher* court expressly declined to "decide whether rule 3-300 applies to a contingency-fee arrangement coupled with a lien on the client's

---

[7] Rule 3-300 provides: "A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied: [¶] (A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and [¶] (B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and [¶] (C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition."

prospective recovery in the same proceeding."[8] (*Fletcher, supra*, 33 Cal.4th at p. 70, fn. 3.) It noted a formal professional responsibility opinion from the Los Angeles County Bar Association that "suggested that rule 3-300 did not apply to a *contingency fee* coupled with a lien against the client's prospective recovery 'in the same matter in which legal services are being provided.' "[9] (*Fletcher*, at p. 70, fn. 3.)

■ The California State Bar has since concluded that "[t]he inclusion of a charging lien in the initial contingency fee agreement does not create an 'adverse interest' to the client within the meaning of rule 3-300 . . . ." (State Bar Standing Com. on Prof. Responsibility & Conduct, Formal Opn. No. 2006-170, p. 7 (Formal Opinion No. 2006-170).) It noted, "[A] charging lien is an equitable corollary to, and thus inherent in, a *contingency* fee contract because, unlike the situation in *hourly* fee agreements: (a) the attorney and client have agreed that the attorney's fee will be limited to a percentage of, and derived only from, a successful recovery created by the attorney's work; (b) the attorney and client share the risk of a recovery; (c) any fee the attorney earns or receives is delayed until the client obtains a recovery, usually at the very end of the representation; and (d) the recovery often represents the only source of funds from which the attorney can ever be paid. For these reasons, charging liens are not only inherent in contingency fee contracts, they are almost universally found and almost universally uncontroversial in such contracts." (*Id.* at p. 5.) Requiring attorneys to advise their clients to seek independent counsel would be futile because "the independent lawyer would likely confirm that charging liens are universally included in contingent fee contracts, that their inclusion in such contracts has consistently been upheld by the courts, and that the client would be hard pressed to find a competent lawyer to take a case on a contingency fee basis without a charging lien."[10] (Formal Opn. No. 2006-170, at p. 6.)

■ In the absence of contrary binding authority, we adopt the California State Bar's sound reasoning. A contingency fee agreement, such as the retention agreement here, need not comply with rule 3-300 to create an

---

[8] See also *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1522–1523 [85 Cal.Rptr.3d 268], noting the open question and declining to reach it.

[9] Plummer curiously contends the retention agreement need not comply with rule 3-300 because it complies with rule 2-200 of the Rules of Professional Conduct. That rule governs fee-sharing agreements between lawyers. (See generally *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 319–320 [93 Cal.Rptr.3d 24] [rule requires client to consent to fee-sharing agreement before fees are divided].) In his declaration, Plummer asserts his fee-sharing agreement with Bisom & Cohen was oral, not written. And the retention agreement does not purport to create that agreement. Whether it comprises the clients' written consent is a point we need not reach.

[10] See also 2 Mallen and Smith, Legal Malpractice (2010) Adverse Interests, section 16:9, pages 927–928, discussing *Fletcher, supra*, 33 Cal.4th 61 and Formal Opinion No. 2006-170.

attorney's lien. Plummer's lien is not invalid for violating that rule. Day/Eisenberg thus fails to show Plummer had no right to possess the settlement funds as a matter of law.

*Triable Issues Exist on the Other Elements of Conversion*

█ Day/Eisenberg advances two other grounds for affirming the judgment on the conversion cause of action. First, it contends it never possessed or controlled all of the settlement proceeds. It claims it merely endorsed the settlement check and passed it on to Bisom. But conversion does not require Day/Eisenberg to have retained physical custody of all of the settlement proceeds. " 'It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use.' " (*Zerin, supra*, 53 Cal.App.4th at pp. 451–452.) "[A]ny act of dominion wrongfully exerted over the personal property of another inconsistent with the owner's rights thereto constitutes conversion." (*McCafferty v. Gilbank* (1967) 249 Cal.App.2d 569, 576 [57 Cal.Rptr. 695].) Plummer raises a triable issue that the settlement check was in Day/Eisenberg's possession and was needlessly endorsed by both of its partners to deceive a bank into negotiating it without Plummer's endorsement. This conduct could constitute conversion. (*Ibid.* [resolving "whether defendant by endorsing the two drafts became liable for conversion"].) "The negotiation of the drafts was certainly an act of dominion . . . . █ 'Where the conversion is the result of the acts of several persons, which, though separately committed, all tend to the same end, there is a joint conversion.' " (*Ibid.*)

Second, Day/Eisenberg contends Plummer failed to show conversion of any "specific sum capable of identification" (*Zerin, supra*, 53 Cal.App.4th at p. 452) because his compensation for his legal work "is a matter between Bisom & Cohen and himself" and "his remedy is a contract action against" Bisom & Cohen. This contention is disjointed. Plummer's contract rights against Bisom & Cohen, if any, would not impair his ability to identify the converted sum.[11] At best, Day/Eisenberg could try to invoke these contract rights to show Plummer had no *immediate* right to possess the settlement funds, or to show Day/Eisenberg did not convert them. But we have already concluded triable issues exist on each point.

---

[11] Neither party invokes the general rule that an attorney's lien "survive[s] an attorney's] discharge, and that such lien entitle[s the attorney] to recover, out of the proceeds of the settlement, the reasonable value of his services rendered prior to discharge." (*Weiss, supra*, 51 Cal.App.3d at p. 598; see also *Fracasse v. Brent* (1972) 6 Cal.3d 784, 786, 792 [100 Cal.Rptr. 385, 494 P.2d 9] [contingency fee attorney entitled to quantum meruit recovery upon discharge].)

In sum, triable issues exist on the elements of conversion. The court erred in summarily adjudicating the conversion cause of action.

*Triable Issues Exist on the Interference Cause of Action*

The elements of the tort of intentional interference with prospective economic advantage "are usually stated as follows: ' "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." ' " (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 [131 Cal.Rptr.2d 29, 63 P.3d 937].)

The court summarily adjudicated the interference cause of action, reasoning: "[B]ecause no contractual relationship existed [between Plummer and the clients, Day/Eisenberg] could not interfere with it." Day/Eisenberg continues to contend Plummer lacked any economic relationship with the clients.

Day/Eisenberg also asserts additional grounds for affirming summary judgment. It contends it lacked knowledge of a relationship between Plummer and the clients, and did nothing to interfere with any such relationship, because it "had no interaction whatsoever with [Plummer] in regard to the Acosta matter" and took over the case 20 months after Plummer stopped working on it. Day/Eisenberg also claims Plummer suffered no damage from any alleged interference.

Triable issues exist on the elements of interference. First, the retention agreement creates a cognizable economic relationship between Plummer and the clients, as already shown. Second, the correspondence between Day/Eisenberg and defense counsel in the underlying case tends to show Day/Eisenberg knew about Plummer's lien on the settlement funds before defense counsel disbursed the settlement funds—and urged defense counsel to circumvent it. Triable issues exist on this point. Third, the evidence tends to show Day/Eisenberg may have interfered with Plummer's lien by having both Day and Eisenberg endorse the settlement check, one with an illegible scribble. This may have been wrongful if it was done with the fraudulent intent to help Bisom negotiate the settlement draft without Plummer's endorsement. That remains a triable issue too. Finally, the disbursement of settlement funds subject to Plummer's lien constitutes damages from the interference.

Because triable issues exist on the elements of interference, the court erred in summarily adjudicating the interference cause of action.

## DISPOSITION

The judgment is reversed. The matter is remanded to the court with directions to vacate its order granting Day/Eisenberg's summary judgment motion and enter a new order denying that motion. Plummer shall recover his costs on appeal.

Sills, P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied May 21, 2010, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied July 28, 2010, S183238. George, C. J., and Chin, J., did not participate therein.