Filed 5/7/13  De Walt v. Jobete Musc Co. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DEREK DE WALT et al., | B240650 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC418301) |
| v. | |
| JOBETE MUSIC CO., INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Holly E. Kendig, Judge.  Affirmed in part and reversed in part.

Leopold, Petrich & Smith, Vincent Cox and Elizabeth L. Schilken for Defendant and Appellant.

Inter-Pacific Law Group, Inc., Arthur J. Liu and Joseph A. Tang for Plaintiffs and Respondents.

_____

This case arises from an underlying action filed in 2003 by respondents,[1] who are the heirs of the late musician and composer Autry De Walt, professionally known as Junior Walker (De Walt), against appellant Jobete Music Co., Inc. (Jobete). In the underlying action, respondents disputed the ownership of renewal copyrights of certain songs and sought a declaration as to which of several contracts between De Walt and Jobete were applicable. A jury found the most recent contract governed, and judgment was entered in favor of Jobete and affirmed on appeal. Although Jobete filed a memorandum of costs in the underlying action, it did not seek its attorney fees. Instead, over the next several years, Jobete unilaterally offset from the royalties payable to respondents amounts it claimed were incurred as attorney fees in the underlying action. In 2009, respondents sued Jobete for breach of contract and conversion. Following a bench trial based on stipulated evidence, the trial court entered judgment in favor of respondents, finding that Jobete was barred from seeking its attorney fees by not pursuing them in the underlying action. We agree that Jobete is no longer entitled to seek its attorney fees. We affirm the judgment in favor of respondents except as to their conversion claim.

### FACTUAL AND PROCEDURAL BACKGROUND

De Walt signed multiple agreements with Jobete: In the 1960's, he signed a series of single-song agreements; in 1975 he signed an exclusive songwriter's agreement; and in 1983 he signed another exclusive songwriter's agreement (the 1983 Agreement). When De Walt died in 1995, his heirs, including respondents, succeeded to his rights and obligations under the 1983 Agreement.

### *The 1983 Agreement*

As relevant here, the 1983 Agreement contains the following provisions: Under the heading "ROYALTIES," section 3(d) states that "Publisher shall have the right to offset any sums which may become payable hereunder against any sums, including advances which have been previously paid to Writer, which may at any time be owed by

---

[1] Respondents are Derek De Walt, Lloyd De Walt, Dennis De Walt, Charles De Walt, Beverly De Walt, Autry De Walt, Jr., and Kenneth De Walt.

Writer to Publisher or to any parent, subsidiary or affiliate of Publisher, or to any corporation, joint venture, partnership . . ."

Under "ACCOUNTING," section 4 provides: "Any suit by Writer or on Writer's behalf with respect to a particular accounting statement shall be forever barred if not commenced within two (2) years from the date such statement is rendered."

Under "WARRANTIES AND REPRESENTATIONS," section 9 provides: "Writer hereby acknowledges the representation and warranty set forth in Schedule 'A' and Writer further represents and warrants that: Writer has full right and power to make this Agreement; that the compositions are and shall be Writer's sole, exclusive and original works; that the Compositions are not taken from any other source (except the public domain of the Territory); that the Compositions have not been previously published and do not infringe on any other works; that there does not exist and shall not exist any adverse claim in or to the Compositions; that the exercise by Publisher of any or all rights acquired by it hereunder will not infringe or invade the personal and/or property rights of any person, firm or corporation; and that Writer has not made and will not make or enter into any undertaking or agreement which will interfere with Writer's full performance of his obligations hereunder or with Publisher's full enjoyment of the rights granted or agreed to be granted to it hereunder."

Under "INDEMITY," section 10 provides: "Writer hereby agrees to indemnify, save, defend, and hold harmless Publisher, its officers, stockholders, directors, agents, employees, licensees, assignees and transferees from any and all loss, claims, actions, suits and demands (including all costs, fees, attorneys fees and expenses relating to the defense, settlement or other disposition thereof) arising out of or connected with any matter or thing which if true could constitute a breach of any of Writer's warranties or representations made in any part of this agreement."

Finally, under "REMEDIES," section 12 provides: "Writer expressly agrees that in the event Writer shall breach any provision of this Agreement . . . Publisher shall have the right to recoup any damages from any sums which may thereafter become due and payable to Writer after the expiration or termination of this Agreement."

### The Underlying Action

In 2003, respondents sued Jobete, and in 2006 filed an amended complaint seeking an accounting and declaratory relief and alleging fraud and breach of contract. The operative complaint alleged that 31 particular songs by De Walt were governed by the 1960's agreements, which did not convey renewal copyrights to Jobete. Jobete contended that the operative agreement was the 1983 Agreement, which transferred the renewal copyrights to Jobete. In its answers to both the original and amended complaints, Jobete sought attorney fees. On the same day Jobete filed its answer to the amended complaint, Jobete's attorney wrote to respondents' attorney and advised the following: Respondents' assertion of an "adverse ownership" claim constituted a breach of the warranties and representations in section 9 of the 1983 Agreement; Jobete was entitled to indemnity under section 10 of the 1983 Agreement; and Jobete reserved the right to determine the timing and manner in which to seek indemnification.

A jury tried the underlying action in November 2006, and found that the 1983 Agreement was the operative agreement. Judgment was awarded in favor of Jobete. Jobete filed a memorandum of costs that did not include a request for attorney fees. Jobete was awarded $22,833.38 in costs. Respondents appealed the judgment, which we affirmed. (*De Walt v. Jobete Music Co., Inc.* (June 3, 2008, B197108) [nonpub. opn.].)

On April 9, 2007, while the appeal was pending, respondents' attorney wrote to Jobete's attorney stating that Jobete had failed to pay respondents the royalties due to them for the period ending December 31, 2006. The royalty statements identified the royalties as "Legal Fees" and indicated they constituted "recoupment of costs and expenses pursuant to paragraph 10 of the agreement." (Emphasis omitted.) The letter threatened legal action if the royalties were not paid.

### The Instant Action

Respondents filed the instant action on July 22, 2009. They filed a first amended complaint (FAC) alleging breach of contract, fraud, money had and received, conversion and unfair competition, seeking payment of the withheld royalties. Jobete filed a cross-complaint for declaratory relief, seeking a declaration that respondents' action was barred

4

by the two-year limitations period in the 1983 Agreement, or alternatively that Jobete was entitled to indemnity.

The case proceeded to a bench trial based on stipulated evidence with no witnesses testifying.[2] The parties agreed that the total amount of royalties withheld from respondents from June 2006 through June 2011 was $62,081.32, and that the amount of attorney fees incurred in the underlying action and on appeal was $640,469.

After issuing a lengthy statement of decision, the trial court found in favor of respondents on their breach of contract and conversion claims and against Jobete on its cross-complaint. Judgment in the amount of $62,081.32 was awarded in favor of respondents. This appeal followed.

## DISCUSSION

As the trial court aptly phrased it, "[t]he basic issue in this action is whether defendant Jobete is entitled to unilaterally deduct 'legal fees' incurred in a prior action from amounts of royalties that the parties stipulate were 'otherwise due the heirs of Autry De Walt' [and] that 'have actually been withheld by Jobete through June 2011,' even though Jobete did not seek recovery of those fees in the prior action." We conclude the answer is no for two reasons. First, there was no adjudication in the underlying action that respondents actually breached the 1983 Agreement. Second, there was no adjudication in the underlying action regarding the amount or reasonableness of Jobete's attorney fees.[3]

---

[2]  Respondents proceeded on only two causes of action for breach of contract and conversion.

[3]  We reject Jobete's argument that the instant lawsuit is barred by the two-year statute of limitations in the 1983 Agreement for suits with respect to "a particular accounting statement." Respondents are not challenging a particular accounting statement; rather, they are challenging Jobete's ongoing practice of unilaterally deducting Jobete's alleged attorney fees from royalties otherwise due to respondents. Indeed, the parties stipulated at the time of trial that Jobete had been engaged in this practice for six years.

5

## I. No Compulsory Cross-Complaint Was Filed

Jobete bases its contractual claim to attorney fees on the indemnification provision of the 1983 Agreement. Section 10 of the 1983 Agreement provides that Jobete is entitled to indemnification, including attorney fees, from De Walt (or in this case his heirs) "arising out of or connected with any matter or thing which if true could constitute a breach of any of Writer's warranties or representations made in any part of this Agreement." Plainly read, the 1983 Agreement provides indemnification only for a breach of warranties, not for the mere act of filing a lawsuit. It is true, as Jobete asserts, that Jobete has the contractual right to offset sums payable to respondents. Section 12 of the 1983 Agreement allows Jobete to "recoup any damages from any sums which may thereafter become due and payable to Writer" in the event "Writer shall breach any provision of this Agreement." (See also section 3(d) of the 1983 Agreement allowing Jobete to offset payable sums.) But it is not true that Jobete itself can simply determine that respondents breached the 1983 Agreement by their claim of ownership to certain renewal copyrights.

The trial court in the instant action concluded that Jobete was required to bring a compulsory cross-complaint for breach of the 1983 Agreement in the underlying action and that its failure to do so bars it from raising such a claim now. We agree.

We quote from the trial court's statement of decision, which correctly sets forth the law: "Failure to plead a cause of action that is related to the subject matter of the complaint bars the defendant from asserting it in any later lawsuit. [Code Civ. Proc., §] 426.30; *AL Holding Co. v. O'Brien & Hicks, Inc.* (1999) 75 Cal.App.4th 1310, 1313–1314. The cross-complaint is compulsory if the cause of action 'arises out of the same transaction, occurrence, or series of transactions or occurrences as the cause of action in the complaint.' [Code Civ. Proc.,] § 426.10[, subd.] (c). Causes of action arise out of the 'same transaction or occurrence' if the factual or legal issues are logically related. They need not be absolutely identical. *Currie Medical Specialties, Inc. v. Bowen* (1982) 136 Cal.App.3d 774, 777. To be considered a compulsory cross-complaint, the related cause of action must have existed at the time [the] defendant served its answer to the complaint.

6

[Code Civ. Proc.,] § 426.30[, subd.] (a); see *AL Holdings Co., supra*, at [pp.] 1313–1314."

Here, on the same date that Jobete filed its answer to the amended complaint in the underlying action, its attorney sent respondents' attorney a letter expressly stating that "the recent assertion of the adverse ownership claim by [respondents] constitutes a breach of the representations and warranties to which they have succeeded." The letter then quotes from section 9 (warranties and representations) and section 10 (indemnification) of the 1983 Agreement. Clearly, Jobete's related cause of action existed at the time it answered the operative amended complaint.

Jobete tries to avoid application of the compulsory cross-complaint rule by arguing that it did not have a right of indemnification until it actually prevailed in the underlying action. But that is not how the rule works. If Jobete had its own related claim for breach of contract when it filed its answer to the operative amended complaint, it was obligated to bring a cross-complaint at that time or be barred from later asserting the claim in another lawsuit.

Jobete also argues that the compulsory cross-complaint rule did not apply because respondents couched their adverse ownership claim in the form of declaratory relief. Code of Civil Procedure section 420.60, subdivision (c) provides that the rule does not apply "where the only relief sought is a declaration of the rights and duties of the respective parties in an action for declaratory relief." But the amended complaint in the underlying action alleged four causes of action for breach of contract, fraud, accounting, and declaratory relief. As the trial court in the instant action noted, each of the causes of action were "inextricably intertwined" as they all involved the 1983 Agreement. Because Jobete had its own claim that respondents breached the very same agreement, it was required to bring it in the underlying action. Jobete's failure to do so bars it from making such a claim now.[4]

---

[4]    As the trial court noted in its statement of decision, "Jobete is apparently deducting *all* of its attorney fees for all four causes of action in the 2003 action from the

## II. Motion for Attorney Fees

Although Jobete prayed for attorney fees in its answers to both the original and amended complaint in the underlying action, it never sought them in its memorandum of costs or by noticed motion in the underlying action. Code of Civil Procedure section 1033.5, subdivision (a)(10)(A) provides that attorney fees authorized by contract are an element of allowable costs under Code of Civil Procedure section 1032. Such attorney fees must be "reasonable in amount," and shall be fixed by "noticed motion." (Code Civ. Proc., § 1033.5, subds. (c)(3), (c)(5).) California Rules of Court, rule 3.1702(e) provides that if a party is entitled to contractual attorney fees in a fixed amount, the fees must be claimed in the memorandum of costs. Otherwise, a notice of motion for attorney fees must be served and filed within the time for filing a notice of appeal. (Cal. Rules of Court, rule 3.1702(b)(1).) As the trial court noted, "[t]here is undoubtedly good reason for this rule, as the trial court is in the best position to evaluate the claim for attorneys' fees and the reasonableness of such fees."

Jobete claims its attorney fees pursuant to section 10 of the 1983 Agreement. Under the above authorities, Jobete was required to seek its fees in the underlying action. Because Jobete failed to do so, we find that Jobete is barred from doing so now. We agree with the trial court that "this conduct by Jobete gives the appearance of a litigation tactic to do an end run around the trial court in the prior action, and avoid a ruling by the trial court judge, so that Jobete could, without any court order, and without any determination that the contract had been breached by the DeWalt heirs, simply decide itself the amount of attorney fees to withhold from the royalty payments that were contractually due to the plaintiff DeWalt heirs."

---

royalties withheld. Jobete has offered no evidence that it was only offsetting an allocated portion of its attorneys fees from the 2003 lawsuit."

## III. Conversion

The judgment in favor of respondents in the instant case upheld their causes of action for both breach of contract and conversion. Jobete contends the trial court erred as a matter of law in upholding the conversion claim. Because respondents alleged they are entitled to punitive damages for conversion, we reach the merits and agree with Jobete.

"A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff. [Citation.] Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment. [Citation.]" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491.) While money can be the subject of an action for conversion if a specific sum capable of identification is involved, "a mere contractual right of payment, without more, will not suffice." (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452.)

The parties agreed that the right to receive royalties is not a property right. Moreover, while respondents argue that the royalty statements identify specific sums withheld as legal fees, respondents merely alleged that Jobete had an obligation to pay them these sums and failed to do so. More is required for conversion. (See *Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 45 ["The existence of a lien, however, can establish the immediate right to possess needed for conversion"].) There was no evidence that respondents had a lien or that Jobete was acting as their agent.

9

## DISPOSITION

The judgment is reversed as to respondents' conversion claim.  In all other respects, the judgment is affirmed.  The parties shall bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
              ASHMANN-GERST


We concur:


_____, P. J.
        BOREN


_____, J.
        CHAVEZ