Filed 4/25/14  Gort v. Kort CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JAMES GORT,<br><br>     Plaintiff and Appellant,<br><br>          v.<br><br>LEE M. KORT et al.,<br><br>     Defendants and Respondents. | G047914<br><br>(Super. Ct. No. 30-2011-00529031)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, William M. Monroe, Judge.  Affirmed.

James Gort, in pro. per., for Plaintiff and Appellant.

Dowdall Law Offices, Terry R. Dowdall and Diane W. Medina, for Defendants and Respondents.

James Gort appeals from a judgment dismissing his complaint against a mobilehome park and its owners after the trial court sustained their demurrer without leave to amend. Gort sued the defendants for malicious prosecution and conversion following their unlawful detainer actions that resulted in Gort's eviction from the mobilehome park and the imposition and perfecting of a warehouse lien against Gort's mobilehome. Gort contends he adequately pled his causes of action against the defendants. We disagree and affirm the judgment.

FACTS & PROCEDURE

Gort and his wife owned a mobilehome and leased a space for it in the Rio Vista Mobilehome Park owned by defendants and respondents Lee M. Kort, Michael H. Scott, Anaheim GP Corp., and Anaheim Associates, LP doing business as Rio Vista Mobilehome Park (hereafter referred to collectively and in the singular as the Park). Because the current action arises out of two prior actions relating to Gort and his wife's tenancy in the Park, in which they represented themselves in propria persona, we begin by detailing the prior actions.[1]

*The Unlawful Detainer/Injunction Action for Violation of Park Rules*

On March 25, 2008, the Park filed an unlawful detainer action against the Gorts seeking to terminate their mobilehome tenancy under Civil Code section 798.56 due to their failure to comply with the Park's rules and regulations by failing to clear their property of excessive junk. (Orange County Super. Ct. Case No. 30-2008-00056509.) When the case came on for trial on May 28, 2008, the parties stipulated the unlawful detainer action would be vacated and recast as an action for injunctive relief under

---

[1]    The relevant court documents pertaining to the underlying actions were the subject of the Park's request to take judicial notice filed in conjunction with its demurrer. (See *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [courts consider judicially noticed material in reviewing demurrer].)

Civil Code sections 798.87, subdivision (b) [substantial violation of mobilehome park rules a public nuisance] and 798.88 [injunction against continuing violations of mobilehome park rules].

On June 18, 2008, the Park filed an amended complaint seeking an injunction requiring the Gorts to clean up their property (hereafter referred to as the Injunction Action). Following a July 2008 trial, the court issued an injunction on August 11, 2008, ordering the Gorts to comply with the Park's rules and regulations concerning on-site storage and to clean up the property.

On October 10, 2008, the Gorts appealed from the injunction. On March 2, 2010, the Appellate Division of the Orange County Superior Court issued its decision on that appeal. Although the Appellate Division specifically found there were "no grounds for reversal of the trial court judgment on its substantive merits[,]" the injunction had to be reversed for jurisdictional reasons. In short, the Appellate Division concluded that because the action had begun as a "'limited civil' case," the trial court did not have authority to issue a permanent injunction—the only injunctive relief available in "'limited civil' cases" was of a temporary nature to preserve property or rights of a party. The Appellate Division observed the injunction was moot however because the Gorts had vacated the property as a result of the judgment in a second unlawful detainer action (discussed anon). But the issues presented in that second unlawful detainer action (unpaid rent and charges) were not moot. On remand, the trial court denied the Gorts' motion to reclassify the Injunction Action as one in unlimited jurisdiction and dismissed the Injunction Action in its entirety.

*The Unlawful Detainer Action for Nonpayment of Rent*

On December 8, 2008, after entry of judgment in the Injunction Action, the Park filed a second unlawful detainer action against the Gorts for nonpayment of accrued rent and other charges. (Orange County Superior Court Case

3

No. 30-2008-00227435, hereafter the "Nonpayment Action".)  Because at the time it was filed the amount the Park sought to recover was under $25,000, the Nonpayment Action was filed in limited civil.  The Park twice obtained default judgments (with attendant writs of possession) against the Gorts, which were set aside.  The Gorts moved out of the mobilehome in February 2009, but the mobilehome remained situated on the leased space in the Park.  The Gorts filed an answer to the complaint on March 23, 2009.

In November 2009, the Park filed a motion for summary judgment in the Nonpayment Action.  The Gorts' written reply to the summary judgment motion raised only an objection to the trial court's jurisdiction, arguing that because the amount in controversy now exceeded $25,000 it could not be heard in limited jurisdiction.  At the hearing on the summary judgment motion, the Park agreed to remit any damages exceeding $25,000 so as to keep the matter in limited jurisdiction.  Although there is no reporter's transcript from the hearing on the summary judgment motion, in his declaration on the subsequent motion for reconsideration, which was denied, Gort stated the trial court denied his oral request made at the hearing to provide substantive opposition to the summary judgment motion since the court had rejected his jurisdictional challenge.  The Park's summary judgment motion was granted, and on November 13, 2009, judgment in the Park's favor was entered for $25,000.

On December 8, 2009, the Park enforced a writ of possession obtaining possession of the leased property.  On December 11, 2009, the Park served the Gorts with notice of a warehouse lien on the mobilehome and the lien was foreclosed upon at a noticed foreclosure sale on January 19, 2010, with the Park obtaining full title to the mobilehome at that time.  On July 29, 2010, the Gorts' appeal from the judgment in the Nonpayment Action was dismissed as untimely, and the judgment in the Nonpayment Action became final.

4

*The Current Action*

Gort, representing himself in propria persona, filed the current action against the Park in December 2011. The operative first amended complaint was filed September 13, 2012 (hereafter the complaint). Gort's wife is not a plaintiff. Gort's complaint contained causes of action for conspiracy, malicious prosecution, and conversion arising out of the Injunction Action and the Nonpayment Action.

Gort alleged the Park defendants conspired to interfere with his mobilehome space lease and to deprive him of ownership of his mobilehome by prosecuting the Injunction Action and the Nonpayment Action. Gort alleged that when the lease was executed in 2003, the Park failed to give Gort and his wife a copy of the lease as required by Civil Code section 798.16. The lease itself was a contract of adhesion because Gort was not given any opportunity to negotiate its terms. Therefore, the Park unreasonably expected the Gorts to comply with the terms and conditions of the lease. Gort alleged that through the actions of the Park's employees, the Park waived violations of the lease other than payment of rent, and waived any violations of the Park's rules and regulations.

Gort alleged the individual defendants (Kort and Scott) formed a conspiracy to forcibly remove the Gorts from the mobilehome park and obtain ownership of their mobilehome. The alleged affirmative acts of this conspiracy included: serving on the Gorts the various notices of violations of rules and regulations that eventually led to filing the Injunction Action; filing the Injunction Action without probable cause because the Park had waived the violation; serving the notices to pay rent or quit that eventually led to filing the Nonpayment Action; filing the Nonpayment Action without probable cause because the Gorts did not owe any money; twice obtaining default judgments and writs of possession against the Gorts in the Nonpayment that were later set aside; successfully moving for summary judgment in the Nonpayment Action; and obtaining and foreclosing on a warehouse lien on the Gorts' mobilehome.

5

Based on the allegations contained in the conspiracy section of Gort's complaint, he alleged two malicious prosecution causes of action (the first and second causes of action) both of which were premised on the Injunction Action. As already noted, the Injunction Action was initially filed as an unlawful detainer action seeking to terminate the tenancy and recover possession of the premises due to the Gorts' continuing violation of the Park's rules and regulations. It was later amended to become an action to enjoin those continuing violations. Gort's first malicious prosecution cause of action alleged the Injunction Action was filed without probable cause because the Park waived the rules violations. Moreover, Gort alleged the Park abandoned the unlawful detainer action (i.e., when it stipulated to vacate the unlawful detainer and amend the complaint to allege an action for injunctive relief), and therefore, the action terminated in Gort's favor. Gort's second malicious prosecution cause of action was focused on the amended complaint in the Injunction Action. He alleged there was no probable cause for seeking injunctive relief because the Park had waived the rules violations, and the Injunction Action was terminated in Gort's favor because the Park did not prosecute it on remand from the Appellate Division of the Superior Court.

Gort's complaint also contained two conversion causes of action (the third and fourth causes of action), both of which were premised on the Nonpayment Action. The first cause of action alleged the Park committed an act of conversion of the Gorts' mobilehome by bringing the Nonpayment Action and obtaining a default judgment and writ of possession, which were set aside. Gort alleged the Park committed a second act of conversion by obtaining a summary judgment in November 2009, which led to obtaining a writ of possession and a warehouse lien which was successfully foreclosed.

*The Demurrer*

The Park filed a demurrer to the complaint, supported by a request for judicial notice of court records in the underlying Injunction Action and the Nonpayment Action. The demurrer was brought on the grounds that all causes of action

6

were barred by principles of res judicata and failed to state facts sufficient to constitute a cause of action.

Gort's written opposition addressed only the conversion causes of action. He made no attempt to oppose the demurrer as to the conspiracy cause of action (to the extent he had attempted to plead conspiracy as a separate cause of action).[2] As to the malicious prosecution causes of action, Gort's opposition stated, "I hereby dismiss the [m]alicious [p]rosecution causes of action as against all defendants" and made no further mention of those causes of action. The Park's written reply began by noting that Gort had specifically stated he was dismissing his malicious prosecution causes of action.

There is no reporter's transcript from the hearing on the demurrer. The minute order refers only to Gort's conversion causes of action. The court ruled that as to the first conversion cause of action premised upon the default judgment and writ of possession that was later set aside, Gort failed to state a cause of action for conversion—only an attempted conversion—because those actions did not result in any disposition of Gort's property rights. As to the second conversion cause of action, the court agreed it was barred by principles of res judicata. The court reasoned that whether summary judgment was properly granted and whether the resulting warehouse lien and foreclosure sale were wrongful, were issues Gort should have raised in the appeal from that judgment. "[B]ecause the appeal was not timely, the judgment in the unlawful detainer action is final, and the resulting lien and sale were lawful. [Gort] cannot re-litigate these primary issues simply by styling the cause of action . . . [as] a conversion claim." The court sustained the demurrer without leave to amend, judgment was entered for the Park, and Gort appealed.

---

[2] Gort raises no arguments concerning his conspiracy claims. We note, "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.]" (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 510-511.)

DISCUSSION

A. *Standard of Review on Demurrer*

Our standard of review is well established. We review an order sustaining a demurrer by exercising our independent judgment to determine whether a cause of action has been stated under any legal theory. (*Ochs v. PacifiCare of California* (2004) 115 Cal.App.4th 782, 788.) We must accept as true properly pleaded allegations of fact but not contentions, deductions, or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "The burden is on [appellant] to demonstrate the manner in which the complaint might be amended, and the appellate court must affirm the judgment if it is correct on any theory. [Citations.]" (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459-460.)

Where, as here, the claim is one of res judicata, "'If all of the facts necessary to show that an action is barred by res judicata are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer. [Citation.] In ruling on a demurrer based on res judicata, a court may take judicial notice of the official acts or records of any court in this state. [Citations.]' [Citation.]" (*Planning & Conservation League v. Castaic Lake Water Agency* (2009) 180 Cal.App.4th 210, 225.) On appeal, we examine de novo the trial court's determination on a demurrer arguing res judicata. (*Id.* at p. 226.)

B. *Malicious Prosecution Causes of Action*

Gort contends he adequately pled his malicious prosecution causes of action. The Park responds Gort affirmatively abandoned those causes of action when he specifically stated in his opposition to the demurrer, "I hereby dismiss the [m]alicious [p]rosecution causes of action as against all defendants[,]" and made no further mention of those causes of action in his opposition. In his reply brief, Gort states the "dismissal" statement was included in his opposition by mistake. We agree with the Park that Gort has waived his arguments concerning the malicious prosecution causes of action.

8

"Under the doctrine of waiver, a party loses the right to appeal an issue caused by affirmative conduct or by failing to take the proper steps at trial to avoid or correct the error.  [Citation.]"  (*Telles Transport, Inc. v. Workers' Comp. Appeals Bd.* (2001) 92 Cal.App.4th 1159, 1167.)  In response to the Park's demurrer, Gort specifically stated he was dismissing the malicious prosecution claims and he made no argument concerning those claims.  The Park's reply papers specifically noted Gort had stated he was dismissing those causes of action.  If the statement in Gort's brief was as he now claims, a mistake, there is nothing in the record indicating he made any effort to correct that mistake below.  Gort's clear concession below waives any claim of error here.  His in propria persona status does not change our conclusion as it is well-established "[p]ro. per. litigants are held to the same standards as attorneys."  (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543.)

C.  *Conversion Causes of Action*

Gort argues the trial court erred by determined his conversion causes of action were barred by principles of res judicata because of the final judgment in the Nonpayment Action.  We reject his contention.

"'Res judicata' describes the preclusive effect of a final judgment on the merits.  Res judicata, or claim preclusion, prevents relitigation of the same cause of action in a second suit between the same parties or parties in privity with them.  Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.'  [Citation.]"  (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)

"To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'  [Citation.]  Under this theory, '[a] cause of action . . . arises out of an antecedent primary right and corresponding duty and the delict or breach of such primary right and duty by the person on whom the duty rests.  "Of these elements, the

9

primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term . . . .'" [Citation.] [¶] 'In California the phrase "causes of action" is often used indiscriminately . . . to mean *counts* which state [according to different legal theories] the same cause of action . . . . ' [Citation.] But for purposes of applying the doctrine of res judicata, the phrase 'cause of action' has a more precise meaning: The cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced. [Citation.] . . . '[T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. [Citation.] Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different *legal ground* for relief." [Citations.]' Thus, under the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right. [Citation.]" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797-798.)

"Collateral estoppel is a distinct aspect of res judicata. . . . '"Collateral estoppel . . . involves a second action between the same parties on a different cause of action. The first action is not a complete merger or bar, but operates as an estoppel or conclusive adjudication as to such issues in the second action which were actually litigated and determined in the first action. [Citation.]" [Citation.]' [Citation.]" (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 866-867.)

"'Traditionally, [courts] have applied the [collateral estoppel] doctrine only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former

10

proceeding must be final and on the merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding. [Citations.]' [Citation.]" (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.) Here there is no issue regarding the fifth privity element of collateral estoppel—the parties are the same.

"[T]he public policies underlying collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342-343.)  "The primary right theory also applies to the issue preclusion component of res judicata.  'In contrast to claim preclusion, in which a prior judgment bars a second suit between the same parties, in issue preclusion "[t]he prior judgment is not a complete bar, but it 'operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action.' [Citation.]" [Citation.]'" (*South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 660.)

The collateral estoppel doctrine precludes Gort's current action for conversion because it is premised upon the same primary right litigated in the Nonpayment Action—namely the Park's right to ownership or possession of the property.

"""The elements of a conversion are the plaintiff's ownership or *right to possession of the property at the time of the conversion*; the defendant's conversion by a *wrongful act or disposition of property rights*; and damages."""" (*Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 45, italics added.)  Those issues were decided by the Nonpayment Action.  (See *Turem v. Texaco, Inc.* (1965) 236 Cal.App.2d 758, 766 [where landlord's right to possession of premises was adjudicated in earlier unlawful detainer action, principles of res judicata barred relitigating right to possession in tenants' subsequent forcible entry and conversion action].)  Under the Mobilehome

11

Residency Law (Civ. Code, § 798, et seq.), the owner of a mobilehome park may terminate a mobilehome tenancy for failure to pay rent. (Civ. Code, § 798.56.) When the tenancy has been lawfully terminated, if the mobilehome has been vacated and has not been removed from the space, the mobilehome park owner is entitled to a warehouse lien against the mobilehome in accordance with Commercial Code section 7209. (Civ. Code, § 798.56a, subd. (e).) If the warehouse lien is not satisfied, it may be enforced via a noticed sale at which the lienholder may buy the goods (i.e., the mobilehome). (Comm. Code, § 7210, subd. (d).)

The Nonpayment Action and ensuing warehouse lien proceeding determined the parties' rights to possession of the leased premises and the mobilehome. The Park prevailed in the Nonpayment Action, obtained a writ of possession, and perfected a warehouse lien, which it lawfully foreclosed upon. Gort did not timely appeal from the judgment in the Nonpayment Action, he made no attempt to satisfy the warehouse lien, and there are no allegations the Park failed to comply with any of the requirements for a warehouse lien sale. (See Comm. Code, § 7210, subd. (d)(i) [warehouse liable for damages caused by failure to comply with statutory requirements for sale, and in case of "willful violation" for conversion].)

Gort's attempt at claiming a separate "conversion" of his mobilehome occurred as a result of the original default judgment the Park obtained in the Nonpayment Action, and the ensuing writ of possession, which were set aside, fails. He has not alleged a separate "conversion" as there was no disposition of any property rights resulting from that default judgment. Additionally, Gort's argument the Nonpayment Action was not a decision on the merits of the Park's right to possession of the premises because he was not allowed to file substantive opposition to the summary judgment motion is without merit. Gort filed written opposition but raised only a jurisdictional issue, which was resolved when the Park agreed to remit damages in excess of $25,000. Any claim of error because the court did not allow Gort to file a second

12

opposition addressing substantive issues had to be raised in an appeal from the judgment in that action. Gort did not timely appeal from the judgment in the Nonpayment Action.

DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.


O'LEARY, P. J.

WE CONCUR:


RYLAARSDAM, J.


MOORE, J.