Filed 8/29/16  Woodward v. Church of Scientology CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VANCE WOODWARD,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CHURCH OF SCIENTOLOGY<br>INTERNATIONAL, INC., et al.,<br><br>    Defendants and Respondents. | B261813<br><br>(Los Angeles County<br>Super. Ct. No. BC540097) |

APPEAL from an order and judgment of the Superior Court of Los Angeles County, Michael Johnson, Judge.  Affirmed.

Vance Woodward, in pro. per., for Plaintiff and Appellant.

Law Offices of Gary Soter and Gary S. Soter for Defendants and Respondents Church of Scientology International; Church of Scientology Western United States; Church of Scientology Flag Service Organization; and Church of Scientology Flag Ship Service Organization.

Rabinowitz, Boudin, Standard, Krinsky & Lieberman and Eric M. Lieberman for Defendants and Respondents Church of Scientology International; Church of Scientology Western United States; Church of Scientology Flag Service Organization; Church of Scientology Flag Ship Service Organization; and Church of Scientology of San Francisco.

Law Office of Kendrick L. Moxon and Kendrick L. Moxon for Defendant and Respondent Church of Scientology of San Francisco.

_____

Plaintiff and appellant Vance Woodward (Woodward), in propria persona, appeals an order granting a special motion to strike (Code Civ. Proc., § 425.16)[1] brought by defendants and respondents Church of Scientology International, Church of Scientology Western United States, Church of Scientology of San Francisco, Church of Scientology Flag Service Organization, Inc. and Church of Scientology Flag Ship Service Organization, Inc. (collectively, the Church or the Church defendants).  Woodward also appeals the subsequent judgment awarding $90,507.50 in attorney fees and costs to the Church defendants as the prevailing parties on the special motion to strike.

The issues presented include whether Woodward's lawsuit arose out of the Church's protected activity, and if so, whether Woodward established a reasonable probability of prevailing in the action.

We conclude the Church met its initial burden to show the lawsuit arose out of its protected activity and that Woodward failed to meet his burden to establish a reasonable probability of prevailing on the merits of his claims.  The order granting the special motion to strike, and the judgment awarding attorney fees and costs to the Church as the prevailing party in the action, are affirmed.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Pleadings.*

On March 21, 2014, Woodward filed suit against the Church defendants alleging four causes of action:  conversion, breach of contract, common counts and declaratory relief.  Woodward alleged in relevant part:

In 1989, at the age of 14, he began participating in Scientology in Winnipeg, Canada.  In 2007, he came to the San Francisco church seeking psychological assistance. There, he met various staff members who earned his trust and encouraged him to pay for

_____

[1]    Unless otherwise specified, all further statutory references are to the Code of Civil Procedure.

2

counseling services (known as auditing in Scientology) on a fee-per-service basis. The Church "systematically made claims as to the benefits of Scientology, including superhuman abilities ([OT or Operating Thetan powers]), all of which were frequently repeated to [him] in an effort to induce [him] into participating in Scientology services and paying huge sums to do so." The Church periodically administered personality tests; whenever the tests showed Woodward had improved, the Church claimed that auditing was responsible; when test results showed deterioration, he was accused of failing to participate honestly and was required to undergo remedial auditing procedures. The Church cajoled him into participating in auditing services, taught him that "Scientology is senior to life because Scientology can control life," that only Scientology could help the world, and that if Woodward "failed to immediately act, the entire Earth was at risk of destroying itself." Between 2007 and 2010, Woodward paid about $600,000 to various Scientology entities. Some of the monies were advance payments for auditing services to be delivered in the future, as well as for food and accommodations.[2]

Woodward's complaint denied that the Church's Religious Services Enrollment Application, Agreement and General Release (Enrollment Application) would have any impact on his right to a refund of his funds. Woodward pled that even assuming he signed the Enrollment Application, it was invalid, void and unenforceable.

In the first cause of action, conversion, Woodward alleged the various entities had converted about $210,000 of his funds, which they had refused to return. In the second cause of action, breach of contract, he alleged, inter alia, that he paid various sums for services that were never delivered, or "for services that were nominally delivered, but which were of such substandard quality as to be worth nothing and/or which were in certain instances, damaging to [him]." In the third cause of action, he alleged the Church defendants were indebted to him on an open book account. On the fourth cause of action, declaratory relief, he sought a judicial determination that the Enrollment Application was void and inapplicable.

---

[2] Woodward alleged, inter alia, that one of the entities owed him $3,693.29 for food and accommodations, and that another entity owed him $1,229.60 for the same.

2. *The Church's special motion to strike.*

On May 29, 2014, the Church defendants jointly brought a special motion to strike Woodward's complaint in its entirety. On the threshold issue, the motion contended that Woodward's lawsuit arose out of the Church's religious speech, and that Woodward could not defeat the motion by characterizing his complaint as alleging a mere claim for a refund. "Here, the underlying acts which caused Woodward to make donations to the Church Defendants *entirely* consisted of speech. . . . [R]eligious speech concerning the efficacy of religious practices necessarily triggers the protections of the anti-SLAPP statute." Further, the religious speech attributed to the Church concerned issues of widespread public interest. "There is, without doubt, continuing widespread public interest in religion generally and in the Church of Scientology in particular. . . . Accordingly, the burden shifts to Woodward" to show a probability of prevailing at trial.

With respect to the merits, the Church asserted Woodward could not prevail at trial for a number of reasons: civil courts are barred from making any determination concerning the truth or falsity of the religious speech allegedly made to Woodward; the Church defendants did not owe a duty of care in counseling Woodward; he expressly agreed in writing that his payments for religious services were gifts without refund rights;[3] returns of donations were exclusively within the ecclesiastical authority and sole discretion of the Church's claims verification board; Woodward signed releases which barred his complaint; and his claims, which spanned the years 2007 to 2010, were time-barred.

---

[3] The Church's papers included a copy of its Enrollment Application, which specifies that Scientology is a religion; that its religious services include auditing, which is Scientology's form of religious counseling; that no Scientology church "is under any duty or obligation whatsoever to return any portion of any religious donation I make"; that a refund of donations may be obtained only through strict compliance with the Church's published policies and procedures relating to its Claims Verification Board; and that return of donations is "exclusively within the ecclesiastical authority and sole discretion" of said board.

4

3. *Woodward's opposition to the special motion to strike.*

In opposition, Woodward argued the anti-SLAPP statute does not apply because the gravamen of this lawsuit "is breach of contract and related causes of action. Defendants took Plaintiff's money in exchange for goods and personal services. In delivering services, [the Church] harmed Plaintiff. [The Church] therefore . . . fell below any conceivable minimum expectations of the contracting parties, . . . . Also, Defendants failed and refused to deliver other services. Plaintiff demanded a return of his funds. Defendants failed or refused to return Plaintiff's funds. Plaintiff sued for breach of the goods-and-services contract and related causes [of action]."

With respect to the merits, Woodward denied that this matter involved a religious dispute, arguing "this case has nothing to do with whether or not [the Church defendants] adhered to their own doctrine or constitution, nor does it have anything to do with the appointment and discipline of clergy or anybody, nor does it have anything to do with the management of church assets or management at all." Further, "resolution of this dispute does not require any ruling on the validity of religious belief or practice."

Rather, according to Woodward, this matter simply involved a contractual claim and had the requisite minimal merit to withstand a special motion to strike. Woodward asserted: "Defendants acknowledge that Plaintiff paid them money in exchange for goods and services. . . . Defendants do not dispute that they delivered some prepaid services. They do not dispute that they failed or refused to deliver other prepaid services. Defendants do not dispute that Plaintiff demanded that his funds be returned. Defendants have not even disputed that they refused to return Plaintiff's funds, save for some throwaway amount that was clearly a setup to lure Plaintiff into giving up his right to costs, interest, and over $100,000 in stated balances."

4. *Trial court's ruling granting the special motion to strike.*

After hearing the matter, the trial court granted the special motion to strike, ruling that the Church met its initial burden to establish Woodward's claims arose out of the Church's protected activity and that Woodward failed to establish a probability of success on the merits.

5

On the threshold issue, the trial court ruled that "[Woodward's] causes of action all arise from [the Church's] religious activities. The claims all relate to religious instruction, counseling and related religious services. And [Woodward] has made a wholesale challenge to the principles and practices underlying [the Church's] religious doctrine. All of this involves religious speech, which is protected under the free speech clause of the First Amendment. [Citation.] Section 425.16(e)(4) of the anti-SLAPP statute broadly protects 'conduct in furtherance of the exercise of the constitutional right of . . . free speech in connection with a public issue or an issue of public interest'. Courts have broadly construed this provision to include 'something of concern to a substantial number of people'. [Citations.] [The Church's] activities involve a substantial number of people, as they are part of a religious organization that has thousands of churches in more than 150 countries and over 30 churches and ministries in California."

With respect to the merits, the trial court found that while Woodward sought to characterize his case as involving a simple breach of contract, "[t]he overwhelming content of [Woodward's] 34 page complaint consists of challenges to the teachings of the Scientology organization . . . and challenges to the value of the services that [Woodward] received from the Scientology organization. [Woodward's] 66 page declaration largely tracks his complaint, and provides even more detail about his dissatisfaction with Scientology. [¶] Each of [Woodward's] causes of action incorporates his allegations concerning his religious dispute with [the Church], including his challenges to the teachings of the Scientology organization and claims that he suffered emotional harm from its religious activities; see Compl. at [paragraphs] 69-106, 263, 275, 291 & 307. Plaintiff's breach of contract claim expressly alleges that religious services he received were 'of such substandard quality as to be worth nothing and/or which were in certain instances, damaging to [him.] [¶] . . . [¶] [Woodward's] challenges to [the Church's] religious principles and practices raise a religious dispute that is not proper for the courts to decide. [Citations.] [¶] Because [Woodward's] religious challenges have infused all of his causes of action and are so predominant in his arguments, this is not a case in which religious parties have presented a discrete property dispute that can be determined

6

by 'neutral principles of law.' [Citations.] . . . [¶] [The Church defendants] have shown that [Woodward's] broad attacks on the Scientology organization raise a religious dispute that cannot be determined by the court."

With respect to the merits, the trial court also found that Woodward's "claims are based upon a[n] [alleged] contractual right to repayment from [the Church], without alleging whether the contract was written, oral or implied; see [Complaint, paragraphs] 282-88. [The Church defendants] have shown that [Woodward] signed a written agreement on 9/21/2007 which designated his payments as religious donations, and expressly stated that 'No Scientology church is under any duty or obligation whatsoever to return any portion of any religious donation I make' and any return is 'exclusively within the ecclesiastical authority and sole discretion of the Claims Verification Board'; . . . . In his declaration, [Woodward] simply describes information which led him to believe that his funds could be returned; see Woodward Decl. [paragraphs] 149-58. [Woodward] does not identify the source of the statements, and he never describes any kind of agreement or understanding with any specific individual within the Scientology organization."

The trial court explained, "A contract requires mutual consent of the parties; see Civ. Code §1550, §1565 & §1580 ('Consent is not mutual, unless the parties all agree upon the same thing in the same sense.'). California courts use an objective standard to determine mutual consent, and the test 'is whether a reasonable person would, from the conduct of the parties, conclude that there was mutual agreement.' [Citation.] It is well settled that 'Contract formation is governed by objective manifestations, not subjective intent of any individual involved.' [Citation.] [¶] [Woodward] has not established any legal or evidentiary basis for the contract upon which all of his claims depend. At best he has presented evidence of his subjective intent and expectations, which does not support a contract."

On October 8, 2014, the trial court signed and filed an order granting the Church's special motion to strike and dismissing Woodward's complaint.

5. *Subsequent proceedings*.

On October 20, 2014, Woodward filed a motion for reconsideration, asserting new facts, circumstances, or law (§ 1008, subd. (a)), and seeking leave to file an amended complaint.

On November 24, 2014, the Church defendants, having prevailed on the special motion to strike, filed a joint motion for an award of attorney fees and costs (§ 425.16, subd. (c)), seeking lodestar attorney fees of $123,550 plus costs for a total award of $126,382.50.

On January 7, 2015, the trial court heard the matters and denied Woodward's motions, stating "this is merely an effort to reargue the matter in light of an adverse ruling." As for the Church's motion, the trial court awarded attorney fees to the Church in the amount of $87,675, representing 70 percent of the amount requested, as well as $2,832.50 in costs.

On January 16, 2015, the trial court entered a formal judgment awarding attorney fees and costs to the Church.

On February 5, 2015, Woodward filed a timely notice of appeal, specifying the October 8, 2014 order which granted the special motion to strike and dismissed the complaint, as well as the January 16, 2015 judgment pertaining to attorney fees and costs.[4]

## CONTENTIONS

Woodward contends: this lawsuit falls within section 425.17's commercial speech exemption to the anti-SLAPP statute; even if the exemption does not apply, this lawsuit is a breach of contract action and does not arise out of the Church's protected activity; even assuming the anti-SLAPP statute applies, he established a probability of prevailing on his claim; he is entitled to an award of attorney fees, costs and sanctions; the trial court erred

---

[4] On June 17, 2015, this court denied the Church's motion to dismiss Woodward's appeal as untimely.

8

in denying his motion for reconsideration; and the trial court abused its discretion in awarding attorney fees to the Church.[5]

## DISCUSSION

1. *No merit to Woodward's reliance on the commercial speech exemption (§ 425.17, subd. (c)) to the anti-SLAPP statute; Woodward waived the issue by failing to meet his burden below to establish the applicability of said exemption.*

Initially, we address Woodward's contention that that the commercial speech exemption of section 425.17, subdivision (c) bars the application of section 425.16 to this action. The argument is not properly before this court.

By way of background, section 425.17, subdivision (c) "exempt[s] from the anti-SLAPP law a cause of action arising from commercial speech when (1) the cause of action is against a person *primarily engaged in the business of selling or leasing goods or services*; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17(c)(2)." (*Simpson Strong-Tie Company, Inc. v. Gore* (2010) 49 Cal.4th 12, 30, italics added (*Simpson*).)

A plaintiff has the burden to establish the applicability of an exemption under section 425.17 from the anti-SLAPP statute. (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 622.) On appeal, we apply a de novo review standard to determine whether the plaintiff met his burden under section 425.17. (*Ibid.*)

---

[5] In his reply brief, Woodward also contends that Eric Lieberman, a New York attorney who is representing respondents on appeal, is engaging in the unauthorized practice of law in California. The argument is meritless in view of this court's grant of an application by Attorney Lieberman to appear pro hac vice in this matter. (Cal. Rules of Court, rule 9.40.)

9

On our de novo review, we conclude Woodward failed to meet his burden below to establish his lawsuit comes within section 425.17, subdivision (c), i.e., the commercial speech exemption to the anti-SLAPP statute. The record reflects that Woodward's opposing memorandum invoked a different exemption below, namely, the public interest exemption found at subdivision (b) of section 425.17.[6] Because Woodward did not even assert the commercial speech exemption in his opposition papers below, he clearly failed to meet his burden to establish the applicability of that exemption.[7]

We are mindful the principle that an appellate court ordinarily will not consider arguments raised for the first time on appeal does not apply when " 'the new argument raises a pure issue of law on *undisputed facts*.' " (*Carmona v. Lincoln Millennium Car Wash, Inc*. (2014) 226 Cal.App.4th 74, 89-90, fn. 6, italics added; accord, *Castaic Lake Water Agency v. Newhall County Water Dist.* (2015) 238 Cal.App.4th 1196, 1204.) Here, however, the applicability of the commercial speech exemption requires, inter alia, a showing that the Church is "primarily engaged in the business of selling or leasing goods or services . . . ." (§ 425.17, subd. (c).) Because Woodward failed to make the necessary showing below, at this juncture the issue is foreclosed.

---

[6] The public interest exemption of section 425.17, subdivision (b), states: "Section 425.16 does not apply to any action *brought solely in the public interest or on behalf of the general public* if all of the following conditions exist: [¶] (1) The plaintiff does not seek any relief greater than or different from the relief sought for the general public or a class of which the plaintiff is a member. A claim for attorney's fees, costs, or penalties does not constitute greater or different relief for purposes of this subdivision. [¶] (2) The action, if successful, would enforce an important right affecting the public interest, and would confer a significant benefit, whether pecuniary or nonpecuniary, on the general public or a large class of persons. [¶] (3) Private enforcement is necessary and places a disproportionate financial burden on the plaintiff in relation to the plaintiff's stake in the matter." (Italics added.)

[7] The reporter's transcript reflects that at the time of the hearing below, Woodward conceded that section 425.17, subdivision (b) is inapplicable but then argued that subdivision (c) of the statute does apply. The Church's counsel then objected, stating "Woodward had the burden of raising the exception and proving it as part of his opposition to this motion and he never mentioned it and the argument has been waived as a matter of law. [¶] He would have to show[, inter alia,] that the Church was primarily engaged in a commercial activity . . . ."

10

Accordingly, we reject Woodward's resort to the commercial speech exemption to the anti-SLAPP statute.

2. *General principles regarding a special motion to strike.*

A special motion to strike "involves a two-step process. First, the defendant must make a prima facie showing that the plaintiff's 'cause of action . . . aris[es] from' an act by the defendant 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.' (§ 425.16, subd. (b)(1).) If a defendant meets this threshold showing, the cause of action shall be stricken unless the plaintiff can establish 'a probability that the plaintiff will prevail on the claim.' " (*Simpson*, *supra*, 49 Cal.4th at p. 21, fn. omitted.) The Legislature has "express[ly] command[ed] that section 425.16 'shall be construed broadly.' (§ 425.16, subd. (a).)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*).)

On the first prong of the two-part test, in determining whether the anti-SLAPP statute applies, we analyze whether the defendants' (the Church's) acts underlying the plaintiff's (Woodward's) cause of action were in furtherance of the defendants' right of petition or free speech. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.)

Appellate review "of an order granting or denying a motion to strike under section 425.16 is de novo. [Citation.] We consider 'the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based.' (§ 425.16, subd. (b)(2).) However, we neither 'weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law.' [Citation.]" (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

3. *The Church met its initial burden to show that Woodward's lawsuit arose from the Church's protected speech activity.*

The scope of protected activity is delineated in subdivision (e) of the anti-SLAPP statute, which states: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection

11

with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) *any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."* (§ 425.16, subd. (e), italics added.)

As Woodward acknowledges, there is no categorical rule that breach of contract claims fall outside the scope of the anti-SLAPP statute. *Navellier* explained, "conduct alleged to constitute breach of contract may also come within constitutionally protected speech or petitioning. The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning. Evidently, '[t]he Legislature recognized that "all kinds of claims could achieve the objective of a SLAPP suit -- to interfere with and burden the defendant's exercise of his or her rights." ' [Citation.] 'Considering the purpose of the [anti-SLAPP] provision, expressly stated, the nature or form of the action is not what is critical but rather that it is against a person who has exercised certain rights" (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 652)." (*Navellier*, *supra*, 29 Cal.4th at pp. 92-93.)[8]

Having reviewed the allegations of Woodward's complaint, we agree with the trial court's determination that Woodward's lawsuit arose from the Church's protected speech activity within the meaning of section 425.16, subdivision (e)(4). Although Woodward

---

[8]    In *Navellier*, the plaintiffs sued a defendant for breach of contract, alleging the defendant violated a release agreement by filing counterclaims in a federal action. (*Navellier*, *supra*, 29 Cal.4th at pp. 86-87.) *Navellier* held the plaintiffs' lawsuit was based on the defendant's constitutional free speech and petitioning activity as defined in the anti-SLAPP statute, so that the defendant met his threshold burden of demonstrating that the plaintiffs' action arose from protected activity. (*Id*. at p. 95.)

12

purports to be suing for breach of a commercial contract for the purchase and sale of "unlicensed mental-health therapy" services at fixed prices, the allegations of Woodward's complaint, as well as the averments in his declaration filed in opposition to the Church's anti-SLAPP motion, make it clear that Woodward's complaint arose out of the Church's religious speech. Woodward himself acknowledges his suit arose out of the Church's speech activity; he states in a declaration that the Church "emotionally harmed me *through practices that involved utterances*." (Italics added.)

Much of the first 29 pages of Woodward's 34-page complaint (with those allegations incorporated into the four causes of action), as well as his 66-page opposing declaration, consists of allegations setting forth the ecclesiastical hierarchy of the Church and describing its core beliefs, doctrines and practices.

Woodward's opposing declaration stated, inter alia: "98. Scientology teaches that Scientology provides a path to achieving or re-achieving spiritual immortality and spiritual rehabilitation. Scientology's method of purportedly assisting spiritual rehabilitation includes a form of counseling known as 'auditing.' [¶] 99. In one type of auditing, Scientology counselors – called 'auditors' -- guide and encourage participants – called 'preclears' or 'PCs' -- to consciously re-experience painful or traumatic events in their past, and to fabricate such events from one's 'past lives,' in order to free themselves of their limiting effects. [¶] 100. In another type of auditing – commonly referred to as 'security checking' or 'sec checking' – auditors guide preclears to recall and divulge prior harmful acts and omissions in the highest possible detail, for [founder L. Ron] Hubbard theorized that the problematic effects of those misdeeds could only be eliminated by recalling them in exact detail." Woodward alleged the Church taught that by participating in these Scientology practices, "a person could develop superhuman abilities," including the ability to read minds, to communicate telepathically, and to travel great distances in ways that scientifically minded persons would consider to be impossible, and could evolve from homo sapiens to a new species, "homo novis."

Woodward repeatedly asserted that he "relied" on the Church's claims, and that he was induced by the Church's teachings to pay for auditing services. He stated that in

13

"reliance upon the claims made by Scientologists including representatives of Defendants, I believed that, by participating in good faith in Scientology, I would achieve the above-mentioned higher states of being and OT abilities or some passable substitute therefor."

Woodward asserted he gave over $600,000 to Scientology, of which roughly $200,000 consisted of donations, $200,000 was for goods and services (books, recorded lectures, courses and auditing) that were provided to him, and $200,000 in advance payments for future goods and services. When he "paid [these] sums, he was under the deluded belief that Scientology provides the only path to spiritual or psychological betterment," and he relied on representations by the Church defendants "regarding the efficacy of Scientology."

In suing for breach of contract, Woodward pled he paid "for services that were nominally delivered, but were of such substandard quality as to be worth nothing and/or which were in certain instances, damaging to [him]." He sought recovery of damages for the Church's allegedly defective services, as well as recovery of his advance payments for future Church services he allegedly never received.

On the record presented, we conclude Woodward's lawsuit arose out of his eventual dissatisfaction with the Church's doctrines and his disappointment in the quality and efficacy of the Church's religious services, particularly, its spiritual counseling or auditing services, which did not deliver the benefits that he expected. Stated another way, the lawsuit arose out of the Church's "conduct in furtherance of [its] exercise of . . . the constitutional right of free speech" (§ 425.16, subd. (e)(4)), specifically, religious speech.

Further, as the trial court found, the religious speech attributed to the Church concerned issues of widespread public interest. (§ 425.16, subd. (e)(4).) The trial court observed that the Church's "activities involve a substantial number of people, as they are part of a religious organization that has thousands of churches in more than 150 countries and over 30 churches and ministries in California." Similarly, this court previously has recognized "that the Church is a matter of public interest, as evidenced by media

14

coverage and the extent of the Church's membership and assets." (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 651 (*Wollersheim*).)[9]

Accordingly, the Church met its threshold burden below to show that Woodward's lawsuit arose out of the Church's protected speech activity (§ 425.16, subd. (e)(4)), thereby shifting the burden to Woodward to show that he was capable of prevailing at trial.

4. *In opposing the special motion to strike, Woodward failed to meet his burden to show a reasonable probability of prevailing in the action.*

a. *Claims for services that were delivered to Woodward.*

To the extent that Woodward's lawsuit seeks damages "for services that were . . . delivered, but which were of such substandard quality as to be worth nothing," Woodward clearly cannot prevail on his legal challenge to the efficacy of the Church's services. It is established that civil courts cannot resolve disputes over religious doctrine and practice which would require the state to become entangled in essentially religious controversies. (*Serbian Eastern Orthodox Diocese for U. S. of America and Canada v. Milivojevich* (1976) 426 U.S. 696, 708-710 [49 L.Ed.2d 151]; *New v. Kroeger* (2008) 167 Cal.App.4th 800, 815.)

b. *Claims to recover advance payments for future services.*

To the extent that Woodward's lawsuit seeks to recover a refund for advance payments that he made for future services, Woodward cannot prevail because he has not shown a contractual right to a refund.

As indicated, in this regard the trial court stated: "In his declaration, [Woodward] simply describe[d] information which led him to believe that his funds could be returned; . . . . [Woodward] d[id] not identify the source of the statements, and he never describe[d] any kind of agreement or understanding with any specific individual within

---

[9]     *Wollersheim* concluded that an action by the church against a former member was properly subjected to a special motion to strike because the church's action arose from the former member's petitioning activity in connection with an issue of public interest. (*Wollersheim*, *supra*, 42 Cal.App.4th at pp. 647-651, disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 68, fn. 5.)

15

the Scientology organization. [¶] . . . It is well settled that 'Contract formation is governed by objective manifestations, not subjective intent of any individual involved.' [Citation.] [¶] [Woodward] has not established any legal or evidentiary basis for the contract upon which all of his claims depend. At best he has presented evidence of his subjective intent and expectations, which does not support a contract."

We agree with the trial court's determination that Woodward's subjective understanding that he was entitled to a refund for advance payments was legally insufficient. (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc*. (2003) 109 Cal.App.4th 944, 956.) Woodward's opposing declaration below, in a section captioned "*My Understanding of the Contract*" (emphasis added), stated: "In every instance, I understood the essential terms to be the same: I was paying for goods and services to be delivered at an unspecified future date. I understood that I would, should I request it, be entitled to a return of my funds for (1) any services that I received for which I was dissatisfied and (2) any goods or services that I never received at all." The declaration elaborated that Woodward derived this understanding from having read online in 2001 that the Church had articulated this policy position on refund of contributions at the time it sought a tax exemption from the Internal Revenue Service.

However, Woodward did not show that the refund policy articulated by the Church in 2001 remained in effect during the years 2007 to 2010, at the time he made the subject payments. Nor did Woodward show that said policy, pertaining to refund of charitable contributions, was incorporated into an alleged contract between him and the Church. Woodward's mere "understanding" that the Church would refund charitable contributions, without more, is insufficient to show a contractual right to a refund of his advance payments.

Woodward's failure to show an entitlement to a refund of his advance payments is also fatal to his other theories of recovery. The elements of conversion include the plaintiff's ownership or right to possession of the property at the time of the conversion (*Plummer v. Day/Eisenberg, LLP* (2010) 184 Cal.App.4th 38, 45); without a right to a refund of his advance payments, Woodward cannot show he was entitled to possession of

16

said monies.  Thus, Woodward did not establish his claim for conversion had possible merit.  As for Woodward's allegation that the Church defendants were indebted to him on an open book account, the term " 'book account' means a detailed statement which constitutes the principal record of one or more transactions between a debtor and a creditor arising out of a contract . . . ."  (1 Cal. Jur. 3d (2016) Accounts and Accounting § 9.)  Having failed to show the Church was contractually obligated to refund his advance payments, Woodward did not show the Church was indebted to him.  Therefore, Woodward did not establish that his claim to recover an indebtedness on an open book account had the requisite minimal merit to withstand the Church's special motion to strike.  Finally, for the reasons already discussed, Woodward is incapable of prevailing on his claim for declaratory relief.

5. *No merit to Woodward's contention the trial court abused its discretion in denying reconsideration.*

On October 8, 2014, the trial court signed and filed an order granting the Church's special motion to strike and dismissing the complaint.  On October 20, 2014, Woodward filed a motion for reconsideration, asserting new or different facts, circumstances or law.  (§ 1008, subd. (a).)  On January 7, 2015, the trial court denied the motion, stating "this is merely an effort to reargue the matter in light of an adverse ruling."

On appeal, Woodward contends the trial court abused its discretion in denying his motion for reconsideration.  Woodward acknowledges that a party seeking reconsideration must provide not only new evidence or different facts, but also a satisfactory explanation for the failure to produce it at an earlier time.  (*Glade v. Glade* (1995) 38 Cal.App.4th 1441, 1457.)  On appeal, Woodward explains he did not present his additional evidence earlier because he had only 13 days to oppose both the anti-SLAPP motion and a motion by the Church defendants to compel arbitration.

Given the chronology of the proceedings, the trial court properly rejected Woodward's explanation for not presenting his additional evidence earlier.  On May 29, 2014, the Church filed its special motion to strike the complaint, with a scheduled hearing date of June 24, 2014.  Thirteen days later, on June 11, 2014, Woodward filed his

17

opposition to the Church's motion. However, the hearing on the motion subsequently was continued for 104 days, from June 24, 2014, to October 6, 2014. Thus, Woodward had ample time to refine his opposition papers and to proffer a supplemental opposition. In sum, Woodward's explanation that he had a mere 13 days to respond to the special motion to strike is not supported by the record. Accordingly, in ruling on the motion for reconsideration, the trial court properly rejected Woodward's assertion that he "exercise[d] reasonable diligence [in] obtaining this evidence."

In sum, Woodward has not demonstrated that the trial court abused its discretion in denying reconsideration based on Woodward's failure to present new or different facts or law. This obviates the need to address whether the trial court retained authority to grant reconsideration following the grant of the special motion to strike, or whether the order denying reconsideration is an appealable order.

6. *No merit to Woodward's contention he is entitled to attorney fees, costs and sanctions.*

Woodward contends he is entitled to an award of attorney fees, costs and sanctions because section 425.16, subdivision (c)(1), requires the court to make an award if it finds that the movant's special motion to strike is frivolous or solely intended to cause unnecessary delay.

Because we affirm the trial court's grant of the Church's special motion to strike, Woodward's contention that *he* is the party entitled to attorney fees, costs and sanctions necessarily fails.

7. *Woodward fails to show an abuse of discretion in the amount of attorney fees awarded to the Church defendants as the prevailing parties on the special motion to strike.*

Finally, we address Woodward's contention the trial court abused its discretion in awarding the Church $87,675 in attorney fees as well as $2,832.50 in costs, for a total award of $90,507.50.

Section 425.16, subdivision (c)(1) states in relevant part that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's

18

fees and costs." Therefore, the Church defendants, as the prevailing parties on the special motion to strike, were entitled to an award of attorney fees and costs as a matter of right. Accordingly, the sole remaining issue is whether the amount of the fee award was excessive.

a. *Standard of appellate review.*

The law in this area is well settled. "An order granting an award of attorney fees is generally reviewed for abuse of discretion. [Citations.] In particular, '[w]ith respect to the *amount* of fees awarded, there is no question our review must be highly deferential to the views of the trial court.' ([Citation]; see *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 [recognizing trial court's broad discretion in determining amount of reasonable attorney fees because experienced trial judge is in the best position to decide value of professional services rendered in court]; *Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 [same].) 'An appellate court will interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion.' [Citations.]" (*Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1319-1320.)

b. *Trial court's ruling.*

In making the award of attorney fees, the trial court explained: "I think there was an enormous amount of work involved, first of all. There was from my standpoint just from reviewing the papers and a great deal more by those who prepared the papers. Mr. Woodward, himself, said he spent over a hundred hours just on his opposition. Frankly, none of that surprises me. [¶] But what I tried to do here is take into account all of the work that was done, the hourly rates and reach what I believe to be a fair and reasonable award for everything that I saw, which is not only based on what was presented to me here, but on my experience with comparable motions and fee applications by what I view to be comparable attorneys. I did put a great deal of thought into [this]."

19

c. *Trial court acted within the bounds of its discretion in determining $87,675 was an appropriate and reasonable fee award.*

The Church defendants requested lodestar attorney fees in the amount of $123,550, consisting of 116.4 hours at $750 per hour for Gary Soter ($87,300) and 72.9 hours at $500 per hour for Kendrick Moxon ($36,450). The trial court awarded 70 percent of the amount requested, ruling that $87,675 "is an appropriate and reasonable award." At this juncture, the burden is on Woodward to demonstrate a manifest abuse of discretion. He has not met his burden.

With respect to the amount of time spent on the matter, the Church's attorneys claimed a total of 189.3 hours in litigating the special motion to strike. As for Woodward, his declaration below stated "I spent *over 100 hours* preparing my opposition papers." (Italics added.) Given the significant amount of time expended by Woodward in litigating the matter below, we cannot say the 189.3 hours incurred by the Church's counsel were excessive.

As for the value of counsel's services, it is settled that an experienced trial judge is in the best position to decide the value of professional services rendered in court. (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132.) Therefore, Judge Johnson, who handled the special motion to strike and also ruled on the subsequent motion for attorney fees, was ideally situated to determine the value of the services rendered by the Church's counsel. Assuming arguendo the trial court credited the Church's counsel for the entire 189.3 hours that were claimed, the adjusted fee award of $87,675 amounted to a rate of about $463 per hour. Given the showing made in counsel's declarations (Attorney Soter was admitted to practice in California in 1975, served on the faculty of Southwestern University School of Law and has extensive experience in complex civil litigation; Attorney Moxon was admitted to practice in 1984, with a practice focused on Scientology-related legal issues), we cannot say the trial court abused its discretion in compensating the Church's counsel at that hourly rate.

## DISPOSITION

The October 8, 2014 order granting the Church's special motion to strike, and the January 16, 2015 judgment awarding the Church $90,507.50 in attorney fees and costs, are affirmed. The Church shall recover its costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:


LAVIN, J.



HOGUE, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21